### J. S. LINDSAY et al. v. WILLIAM ALLEN et al.

*(*Knoxville.* Special April Term, 1904.)

1. **WRIT CF ERROR.** Does not lie from chancellor's decree made at chambers; but an appeal lies.

A writ of error will not lie to review the chancellor's decree made at chambers under the provisions of the statute (Acts 1903, ch. 248), for the appeal therein given is the exclusive and only method provided for taking the case to the supreme court for revision of the chancellor's decree so rendered at chambers. (*Post, pp.* 645-646.)

See headnote 17.

Acts cited and construed: 1903, ch. 248, sec. 4.

---

*April 2, 1904.

Lindsay v. Allen.

2. **CONSTITUTIONAL LAW.** Provision in statute for removal of county seat upon two-thirds of the vote in the preceding governor's election is unconstitutional.

A section of a statute (Acts 1873, ch. 103, sec. 6) providing that the county seat shall not be removed to any place, unless a vote is cast for the removal to said place equal to two-thirds of the vote cast in the next preceding governor's election is void and unconstitutional, because in violation of the constitution (art. 10, sec. 4), providing that the seat of justice of any county shall not be removed without the concurrence of two-thirds of the qualified voters of the county. (*Post, pp.* 646-647.)

Constitution cited and construed: Art. 10, sec. 4.

Acts cited and held unconstitutional: 1873, ch. 103, sec. 6.

3. **SAME.** Same. Unconstitutional provision in a statute does not affect the rest of the statute, when.

The statute (Acts 1873, ch. 103) can well stand without the said sixth section, inasmuch as the constitutional provision (art. 10, sec. 4) takes the place of the said sixth section, and inasmuch as it may be reasonably presumed that the legislature would have enacted the remaining provisions of the statute, even if its attention had been drawn to the unconstitutionality of the sixth section; and, therefore, the validity of the rest of the statute is not affected by the unconstitutionality of the sixth section thereof. (*Post, p.* 647.)

Acts cited and construed: 1873, ch. 103.

Cases cited and approved: Bouldin v. Lockhart, 3 Bax., 262; Jones v. Memphis, 101 Tenn., 188.

4. **SAME.** Removal of county seat without concurrence of legislature, where county has not been reduced since the constitution of 1870.

The seat of justice of a county reduced for the purpose of forming a new one before the constitution of 1870, but not reduced since then, may be removed upon the concurrence of two-thirds

Lindsay v. Allen.

of the qualified voters of the county, without the concurrence of two-thirds of both branches of the legislature. (*Post, pp.* 648-649.)

Constitution cited and construed: Art. 10, sec. 4.

5. **SAME.** Same. Word "is" is used in the sense of words "shall be" or "may be," when.

The word "is" in the constitutional provision (art. 10, sec. 4): that "where an old county is reduced for the purpose of forming a new one," etc., is used in the sense of the words "shall be" or "may be." (*Post, pp.* 648-649.)

Constitution cited and construed: Art. 10, sec. 4.

6. **ELECTION.** Statute enacted too late to be put in operation does not apply to that particular election.

Where the election for the removal of a county seat is advertised to be held and is held so soon after the enactment of a law putting a county under the operation of the Dortch law that there is not time to put the machinery of that law into operation, such law does not apply to such election. (*Post, pp.* 647-648.)

Acts construed: 1903, ch. 235.

Case cited and approved: Davis v. Rogersville, 107 Tenn., 588.

7. **DEMURRER.** Raises questions on face of bill only, and copy of decree filed by defendant can not be considered upon demurrer for res adjudicata.

In disposing of a demurrer presenting the point that the complainants are bound by a decree entered in a former suit, a copy of the decree in such suit filed by the defendant is not a part of the bill, and, therefore, can not be looked to by the court, as the face of the bill only can be considered in disposing of a demurrer. (*Post, p.* 649.)

8. **RES ADJUDICATA.** Voluntary dismissal of bill is not.

The settled rule is that a mere voluntary dismissal on the part of the complainant will not prevent the bringing of a new suit upon the same subject-matter by the same complainant against the same defendant. (*Post, p.* 650.)

Case cited and approved: Mabry v. Churchwell, 1 Lea, 416, 424.

**9. SAME. Same. Mere dismissal by consent of parties is not.**
The mere dismissal of a cause by consent of parties will not bar
a future action. (*Post, pp. 650-654.*)

Cases cited: Hodges v. Bauchman, 8 Yer., 186; Fry v. Taylor,
1 Head, 594; Brown v. Brown, 86 Tenn., 318; United States v.
Parker, 120 U. S., 89; Haldeman v. United States, 91 U. S., 584;
and cases cited therein, and in the opinion on pages 650-654.

**10. SAME. Same. Same. Effect of consent decrees.**
A consent decree is binding according to its terms upon those who
agree to it, and it can not be appealed from or questioned by
writ of error, but can be attacked only by an original bill, or
bill of review in the nature of an original bill, for fraud.
(*Post, p. 654.*)

Cases cited and approved: Jones v. Williamson, 5 Cold., 371;
Milly v. Harrison, 7 Cold., 199; Revis v. Wallace, 2 Heis., 658;
Williams v. Neil, 4 Heis., 279; Dillard v. Harris, 2 Tenn. Chy.,
197; Mayo v. Harding, 3 Tenn. Chy., 237, 241; Hix v. Gosling, 1
Lea, 573; Jones v. McKenna, 4 Lea, 630, 639; Penniman v. Smith,
5 Lea, 136; Boyce v. Stanton, 15 Lea, 346, 375-376; Greenlaw v.
Pettit, 87 Tenn., 467, 476; Bigley v. Watson, 98 Tenn., 353, 357-
358; Wilson v. Schaefer, 107 Tenn., 334.

**11. SAME. Public is not concluded by suit on its behalf by parties
assuming to represent it, except by a decision upon a fairly pre-
sented case.**
Before the rights of the public are concluded in a litigation by
parties complainant, assuming as citizens and taxpayers to
stand forth as the champions of public rights and the conserv-
ators of the interests of all other citizens and taxpayers stand-
ing in the like case, there must be a reasonably fair presenta-
tion of the case to a court of competent jurisdiction, and a con-
sideration and determination of the matter by the court.
(*Post, p. 657.*)

Lindsay v. Allen.

12. SAME. Same. Complainants assuming to act for the public
may abandon suit on terms as to costs, etc., but the public is
not bound thereby.

Persons assuming to appear for the public as parties complain-
ant, in the capacity of citizens and taxpayers, in litigation
affecting public interests, have the option to abandon the posi-
tion assumed, and may make terms as to costs and expenses, but
in so abandoning the suit they do not act for or bind the public,
but only themselves. (Post, p. 658.)

13. SAME. Same. Same. Complainants assuming to act for the
public can not conclude the public by agreement with adver-
saries, except as to evidence, when.

Aside from reasonable and bona fide agreements as to evidence,
made during the progress of a cause, persons assuming to ap-
pear for the public as parties complainant, in the capacity of
citizens and taxpayers, in litigation affecting public interests,
can not conclude the rights of the public by their agreements
with adversary parties or adverse interests. (Post, pp. 658-659.)

Case cited, approved, and distinguished:  Fry v. Taylor, 1 Head,
594.

.14. COUNTY SEAT REMOVAL. Upon concurrence of two-thirds
of the qualified voters, and not by consent of complainants in
suit on behalf of the public.

The removal of a county seat can be brought about only by the
vote of two-thirds of the qualified voters of the county, and can
not be accomplished by the agreement and consent of the par-
ties complainant, assuming to act for the public in the capacity
of citizens and taxpayers, in a suit to prevent such removal.
(Post, p. 658.)

See headnotes, 2, 4, and 5.

Constitution construed:   Art. 10, sec. 4.

112 Tenn—41

Lindsay v. Allen.

**15. SAME.** Suit to prevent, for want of requisite vote, is not a contested election case, but a case to restrain the exercise of unconstitutional powers, and the chancery court has jurisdiction.

Where the jurisdiction of the chancery court is invoked to prevent the removal of the county seat on the ground that the concurrence of two-thirds of the qualified voters of the county, has not been obtained as required by the constitution (art. 10, sec. 4), the controversy does not fall under the classification of contested election cases, but, on the contrary, falls under the class of cases wherein the court restrains public officers from the exercise of unconstitutional powers, and the chancery court has jurisdiction. (*Post, pp.* 659-661.)

Code cited and construed: Sec. 6063 (S.); sec. 4997 (M. & V.); sec. 4225 (T. & S. and 1858).

Cases cited and approved: Bradley v. Commissioners, 2 Hum., 428; Ford v. Farmer, 9 Hum., 154; Gotcher v. Burrows, 9 Hum., 595; Bridgenor v. Rodgers, 1 Cold., 258; Cocke v. Gooche, 5 Heis., 294; Winston v. Railroad, 1 Bax., 60; Humphreys Co. v. Houston Co., 4 Bax., 593; Stuart v. Blair, 8 Bax., 141, 147; Bouldin v. Lockhart, 1 Lea, 195; Lynn v. Polk, 8 Lea, 121; Trading Stamp Co. v. Memphis, 101 Tenn., 181; Weaver v. Davidson Co., 104 Tenn., 315; Patton v. Chattanooga, 108 Tenn., 221-227.

**16. SAME.** Chancery jurisdiction to go behind findings of county court as to vote for.

The chancery court has jurisdiction to inquire whether two-thirds of the qualified voters of the county voted in favor of the removal of the county seat, and it may go behind the findings of the county court, and determine for itself whether, in fact, two-thirds of all the qualified voters of the county voted in favor of the removal, because the power of the county court in the premises is not judicial, but legislative, and its action in such matters is subject to review, for it has not power to purge the polls. (*Post, pp.* 660-662.)

Lindsay v. Allen.

Cases cited and approved:  Bouldin v. Lockhart, 3 Bax., 262, 274-276;  Bouldin v. Lockhart, 1 Lea, 195;  Braden v. Stumph, 16 Lea, 581.

17. **APPEAL.**  Questions not before supreme court upon special appeal considered as arising out of questions properly before the court.

Questions made in demurrer which were overruled by the chancellor are not brought up to the supreme court, as such, by the special appeal of complainants from those parts of the decree sustaining certain points of the demurrer and dismissing the bill thereon, and can not, therefore, be considered from that standpoint, yet they may be considered as collateral to and arising out of other questions properly before the court.  (*Post*, *pp.* 645, 659.)

See headnote 1.

18. **SAME.**  Matters not brought to the attention of the court below will not be considered upon a special appeal, when.

The action of the chancellor in modifying the injunction and increasing the penalty of the injunction bond can not be considered by the supreme court upon a special appeal from a decree dismissing the bill upon demurrer, where no objection as to these matters was brought to the attention of the chancellor when he granted the special prayer for an appeal, and where they are not included therein.  (*Post*, *pp.* 659, 662.)

---

FROM CAMPBELL.

---

Appeal and writ of error from the Chancery Court of Campbell County.—HUGH G. KYLE, Chancellor.

AGEE & PETERS, LUCKY, SANFORD & FOWLER, R. P. HAGGARD, and WRIGHT & WRIGHT, for complainants.

POWERS & OWENS, TEMPLETON, LINDSAY & TEMPLETON, and L. H. CARLOCK, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed to enjoin the removal of the county seat of Campbell county from Jacksboro to La Follette. Sundry grounds were stated in the bill as reasons why such removal could not be lawfully had. To this bill eleven demurrers were interposed.

The case was heard before the chancellor at chambers on the eighteenth day of January, 1904, under the authority conferred by chapter 248, page 577, of the Acts of 1903, and he sustained the first, second, third, and fourth grounds of demurrer, and dismissed the bill as to the portions thereof to which the said four grounds applied.

He also sustained the ninth ground of demurrer. He overruled the fifth, sixth, seventh, eighth, tenth, and eleventh grounds. However, he adjudged that, inasmuch as the ninth ground went to the whole bill, the bill should be dismissed, and accordingly it was dismissed, and the injunction dissolved, and a decree entered against the complainants and their surety on the prosecution bond for all of the costs, and an inquiry of damages awarded on the injunction bond.

Lindsay v. Allen.

The complainants prayed, and were granted, an appeal from so much of the decree as sustained the first, second, third, fourth, and ninth grounds of demurrer, and from so much of the decree as ordered the bill to be dismissed and the injunction dissolved, and as taxed the complainants with the costs of the cause, and as awarded a reference for damages against the complainants on the injunction bond.

No appeal was prayed by the defendants from the action of the chancellor in overruling the remaining grounds of demurrer. The defendants have attempted to bring these matters before the court by writ of error, but no provision is made in the statute for such a proceeding. Section 4 of the act reads: "If any of the parties are dissatisfied with any of the decrees entered under the provisions of this act, and the chancellor in the exercise of his discretion permits an appeal therefrom, they shall have the same right of appeal as if the cause was heard in term time; provided, that said appeal be prayed for at the time the decree is rendered by the chancellor, and the said chancellor shall have the right to allow the appellant such time as he thinks best, not to exceed thirty days, in which to perfect said appeal by giving bond or otherwise complying with the terms of the decree. Such order granting the appeal shall be indorsed by the chancellor as are other orders, and shall in like manner be transmitted to and entered by the clerk and master; provided, further, that in appeals prayed and granted at chambers the rule as to

bills of exceptions shall be in no wise different from the rules in force during term time." Page 578.·

There is no other method provided in the statute for bringing the case to this court for revision of the chancellor's decree so rendered at chambers. The method of appeal must therefore be held exclusive of all ·others.

It is assumed by the defendants, as we suppose, that the general provisions of the Code in respect of writs of error sued out upon decrees and judgments rendered in term time would apply. This, however, is an incorrect assumption. The proceedings authorized by the legislature, under chapter 248, supra, are peculiar, and cannot be extended by construction. The remedy there given by appeal is ample. If either party fail to avail himself of it, he must be held to have waived all objections that could have been remedied by the appeal.

It results that we have not before us the fifth, sixth, seventh, eighth, tenth, and eleventh grounds of demurrer, and they cannot be further noticed.

We now take up the first, second, third, fourth, and ninth grounds of demurrer, in the order named.

The first ground of demurrer presents the point that chapter 103, page 138, of the Acts of 1873, is not void, and that so much of the bill as is based upon the assumption that the said act is void is bad on its face.

This ground of demurrer is well taken.

Section 6 of the act referred to reads as follows:

"Sec. 6. Be it further enacted that the county seat shall not be removed to any place unless a vote is cast

for the removal to said place equal to two-thirds of the vote cast in the next preceding governor's election."

This section is void, because in violation of article 10, section 4, of the constitution, which provides: "Nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters of the county."

The unconstitutionality of the aforesaid sixth section, however, does not nullify the rest of the act. The rule upon this subject is thus accurately stated in the fourth headnote to *Jones* v. *Memphis,* 101 Tenn., 188, 47 S. W., 138, viz.: "Where a single statute, or several statutes constituting one scheme, contain one or more unconstitutional provisions, the obnoxious provisions will be eliminated, and the statute or scheme sustained as to the rest, unless the provisions are deemed so essential, and are so interwoven with others, that it cannot be reasonably presumed the legislature intended the statute to operate otherwise than as a whole, and, in that event, the entire statute or scheme falls." 101 Tenn., 188, 189, 47 S. W., 138.

The statute in question can well stand without the sixth section, inasmuch as the constitution takes the place of that section. We cannot doubt that the legislature would still have passed the remaining provisions, even if its attention had been drawn to the unconstitutionality of the sixth section. *Bouldin* v. *Lockhart,* 3 Baxt., 262.

The second ground of demurrer presents the point

that the election was advertised for March 28, 1903, and the Dortch law, under the terms of the act putting Campbell county under that law, was not passed until March 26, 1903, only two days prior to the time fixed for the election, and hence there was not time to put the machinery of that law into operation, and it did not apply to that particular election. We think this view is correct. The point made falls within the principle of *Davis* v. *Rogersville*, 107 Tenn., 588, 64 S. W., 893. The second ground of demurrer is therefore sustained.

The third ground of demurrer is based upon the following portions of section 4, article 10, of the constitution of 1870, viz.: "Where an old county is reduced for the purpose of forming a new one, the seat of justice in said old county shall not be removed without the concurrence of two-thirds of both branches of the legislature, nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters of the county." In 1849 a portion of Campbell county was taken off when Scott county was formed, and in 1850 another portion was taken off when Union county was formed. Campbell county has not been reduced since the constitution of 1870 went into effect. The demurrer in question presents the point that the language above quoted from the constitution, in respect of the reducing of the size of counties and the concurrence of the legislature in the removal, applies only to such counties as may be reduced in size subsequent to the going into effect of the constitution

of 1870, and not to the counties reduced before that time. We think this construction is the correct one. When the whole paragraph is read, out of which we have taken the above excerpt, it clearly appears that the constitution speaks to the future, and not of the past. It is said: "No part of a county shall be taken off," etc., and, "where an old county is reduced, for the purpose of forming a new one," etc., "but the foregoing provision requiring a two-thirds majority . . . shall not apply to the counties of Obion and Cocke." It is clear that the word "is" is used in the sense of "shall" or "may be."

This ground of demurrer must therefore be sustained.

This likewise disposes of the fourth ground of demurrer.

The ninth ground of demurrer presents the point that the complainants in the present case are bound by the fact that J. M. Sharp and others had, as citizens and taxpayers, filed a former bill for the same purpose, and had dismissed it.

The defendants have filed a copy of the decree which was entered in the former cause. This, however, is not a part of the bill, and we cannot look to it. In disposing of the demurrer, we can look only to the face of the bill.

Looking, then, to the face of the bill, there are only two constructions possible. One of these is that the complainants in the former suit dismissed the bill merely upon their own motion, and the defendants

agreed to pay the costs. The second is that the complainants in that bill and the defendants thereto entered into a contract to the effect that the complainants would dismiss the bill in consideration of an agreement on the part of defendants to assume and pay the costs of the cause, and that this contract was carried out; the bill being dismissed with complainants' consent, and the defendants thereto agreeing to pay, and actually paying, the costs.

As to the first construction, we need consider this no further than to say that it has been held, and the settled rule in this State is, that a mere voluntary dismissal on the part of the complainant will not prevent the bringing of a new suit upon the same subject-matter by the same complainant against the same defendant. *Mabry* v. *Churchwell,* 1 Lea, 416-424.

As to the second construction.

Upon this phase of the matter we are referred, among other cases, to *United States* v. *Parker,* 120 U. S., 89, 95, 7 Sup. Ct., 454, 30 L. Ed., 601, and to certain language there used by Mr. Justice Matthews. In that case it appeared that a suit had been theretofore brought by the governor against Parker on his official bond, and that in that case a judgment had been rendered in favor of Parker, which, after certain recitations, concluded as follows: "Upon motion of Ellis & King, attorneys for defendants, and it appearing to the court that the subject-matter in this suit has been adjusted and settled by the proper parties in Washington,

it is therefore ordered that this cause be, and the same is, hereby dismissed."

In discussing this matter, Mr. Justice Matthews, after disposing of the contention that the foregoing entry was merely a nonsuit, and holding that it was not in fact a nonsuit, continued:

"But a nonsuit is to be distinguished from a retraxit. *Minor* v. *Mechanics' Bank,* 1 Pet., 46, 7 L. Ed., 47. Blackstone defines the difference as follows: 'A retraxit differs from a nonsuit in this: One is negative, and the other positive. The nonsuit is a mere default or neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open, voluntary renunciation of his claim in court, and by this he forever loses his action.' 3 Blackstone, Comm., 296. And it has been held that a judgment of dismissal, when based upon and entered in pursuance of the agreement of the parties, must be understood, in the absence of anything to the contrary, expressed in the agreement and contained in the judgment itself, to amount to such an adjustment of the merits of the controversy by the parties themselves through the judgment of the court as will constitute a defense to another action afterwards brought upon the same cause of action. *Bank of Commonwealth* v. *Hopkins,* 2 Dana, 395; *Merritt* v. *Campbell,* 47 Cal., 542. It is clearly so when, as here, the judgment recites that the subject-matter of the suit had been adjusted and settled by the parties. This is equivalent to a judgment that

the plaintiff had no cause of action, because the defense
of the defendant was found to be sufficient in law and in
fact.   Upon general principles of the common law, reg-
ulating the practice and procedure of courts of justice,
it must be held that the judgment here in question was
rendered upon the merits of the case, is final in its form
and nature, and must have the effect of a bar to the
present action upon the same cause."

In *Haldeman* v. *United States*, 91 U. S., 584, 23 .L. Ed.,
433, it was held that the entry of a judgment "that the
suit is not prosecuted, and be dismissed," is nothing
more than the record of a nonsuit.

Again it is said in that case:   "There must have been
a right adjudicated or released in the first suit to make
it a bar, and this fact must appear affirmatively.   The
plea does not aver that the parties had by their agree-
ment adjusted the matter in controversy, or that there
was any adjudication thereon.   Whatever may be the ef-
fect given by the courts of Kentucky to a judgment en-
try, 'Dismissal agreed,' it is manifest that the words do
not of themselves import an agreement to terminate the
controversy, or imply an intention to merge the cause of
action in the judgment.   Suits are often dismissed by
the parties, and a general entry is made to that effect,
without incorporating in the record, or even placing on
file the agreement.   It may settle nothing, or it may
settle the entire dispute.   If the latter, there must be a
proper statement to that effect to render it available as
a bar. But the general entry of the dismissal of a suit by

agreement is evidence of an intention, not to abandon the claim on which it is founded, but to preserve the right to bring a new suit thereon, if it becomes necessary. It is a withdrawal of a suit on terms, which may be more or less important. They may refer to costs, or they may embrace a full settlement of the contested points; but, if they are sufficient to bar the plaintiff, the plea must show it. Id., 586.

See, also, *Kelly* v. *Town of Milan* (C. C.), 21 Fed., 842, 862, *et seq.,* where the matter is discussed at length.

In those jurisdictions where the rule indicated by the word "retraxit" has been recognized, the substance of the matter seems to be that a dismissal by agreement of the parties is equivalent to, and is treated as, a public renunciation on the part of the complainant of the claim asserted by him in his pleadings against the defendant, and he is thereafter estopped to bring it forward again.

In 6 Am. & Eng. Encyc. Pl. and Pr., 991, it is said: "In some States, a dismissal by agreement is regarded as a bar to a subsequent suit involving the same issues." [Citing *Merritt* v. *Campbell,* 47 Cal., 542; *Crossman* v. *Davis,* 79 Cal., 603, 21 Pac., 963; *Bank* v. *Hopkins,* 2 Dana (Ky.), 395; *Jarboe* v. *Smith,* 10 B. Mon. (Ky.), 257, 52 Am. Dec., 541; *Rolfe* v. *Burlington, etc.,* 39 Minn., 398, 40 N. W., 267; *Murphy* v. *Creath,* 26 Mo. App., 585; *Phillpotts* v. *Blasdel,* 10 Nev., 19; *Wohlford* v. *Compton,* 79 Va., 333; *Siron* v. *Ruleman's Ex'r,* 32 Grat., 215; *Hoover* v. *Mitchell,* 25 Grat. (Va.), 389]; but the better rule is that it must be affirmatively shown either that

the dismissal or nonsuit was upon examination of the merits [citing *Donahue* v. *Drexler,* 82 Ky., 157, 56 Am. Rep., 886; *Chase's Case,* 1 Bland (Md.), 220, 17 Am. Dec., 227; *Edgar* v. *Buck,* 65 Mich., 359, 32 N. W., 644], or that the intention of the parties was to finally settle the controversy by the agreement [citing *Murphy* v. *Creath,* 26 Mo. App., 585; *Haldeman* v. *U. S.,* 91 U. S., 584, 23 L. Ed., 433], or to merge the cause of action in the judgment [citing *Haldeman* v. *U. S.,* supra], and that otherwise the dismissal will not operate as a bar to a subsequent proceeding [citing *Knox* v. *Waldoborough,* 5 Me., 185; *Murphy* v. *Creath,* supra; *Carter* v. *Wilson,* 19 N. C., 276; *Drake* v. *Rogers,* 32 Me., 524]."

We have no case in this State applying the rule of "retraxit," and we shall not now adopt it. We have numerous cases (*Jones* v. *Williamson,* 5 Cold., 371; *Milly* v. *Harrison,* 7 Cold., 199; *Revis* v. *Wallace,* 2 Heisk., 658; *Williams* v. *Neil,* 4 Heisk., 279; *Hix* v. *Gosling,* 1 Lea, 573; *Jones* v. *McKenna,* 4 Lea, 630, 639; *Penniman* v. *Smith,* 5 Lea, 136; *Boyce* v. *Stanton,* 15 Lea, 346, 375-6; *Greenlaw* v. *Pettit,* 87 Tenn., 467, 476, 11 S. W., 357; *Bigley* v. *Watson,* 98 Tenn., 353, 357-8, 39 S. W., 525, 38 L. R. A., 679; *Wilson* v. *Schaefer,* 107 Tenn., 334, 64 S. W., 208; *Dillard* v. *Harris,* 2 Tenn. Ch., 197; *Mayo* v. *Harding,* 3 Tenn. Ch., 237, 241) upon the subject of consent decrees, the substance of which is that a consent decree is binding according to its terms upon those who agree to it, and that it cannot be appealed from or questioned by writ of error, but can be

attacked only by an original bill, or bill of review in the nature of an original bill, for fraud. None 'of these cases go so far as to hold that the mere dismissal of a cause by consent of parties will bar a future action.

We have cited to us 24 Am. and Eng. Encyc. Law (2d Ed.), 758, where it is said: "The general principle has been enunciated that in equity, if *bona fide* bills have been filed and litigated by representatives of a class, and the subject-matter of the suit is common to all, the decree binds the entire class as fully as if all were before the court." In support of this rule, in addition to the authorities cited in the footnote to the text (*McIntosh* v. *Pittsburg* [C. C.], 112 Fed., 705; *Harmon* v. *Auditors of Public Accts.*, 123 Ill., 122, 13 N. E., 161, 5 Am. St. Rep., 502; *Hawthorne* v. *Beckwith,* 89 Va., 786, 17 S. E., 241; *Stallcup* v. *Tacoma,* 13 Wash., 141, 42 Pac., 541, 52 Am. St. Rep., 25), counsel for defendants have cited to us Smith. Eq. Rem. of Creditors, section 73; *Brooks* v. *Gibbons,* 4 Paige, 374; *Innes* v. *Lansing,* 7 Paige, 585 (both cases involving the rights of creditors) ; *Ashton* v. *City of Rochester,* 133 N. Y., 187, 30 N. E., 965, 31 N. E., 334, 28 Am. St. Rep., 619; *Gallaher* v. *Moundsville,* 34 W. Va., 730, 12 S. E., 859, 26 Am. St. Rep., 942 (involving rights asserted against cities) ; *Sauls* v. *Freeman,* 24 Fla., 209, 4 South., 525, 12 Am., St. Rep., 190; *Sabin* v. *Sherman,* 28 Kan., 289 (which were cases concerning rights asserted against counties) and Van Vleet on Former Adjudication, vol. 1, sections 37, 38, and vol. 2, sections 586, 570, pp. 1150, 1157,

which sections cover the different phases of the matter above referred to. We are also refered to our own cases of *Hodges* v. *Bauchman,* 8 Yerg., 186; *Fry* v. *Taylor,* 1 Head, 594, concerning the probate of wills, and our case of *Brown* v. *Brown,* 86 Tenn., 318, 6 S. W., 869, 7 S. W. 640 *et seq.,* discussing these cases.

We have no fault to find with the general principle above stated, but the case made in the bill does not fall within it. It is true that the case of J. M. Sharp and others concerned the same subject-matter we have before us in the present bill, and was presented by citizens and taxpayers of Campbell county, just as this bill is; but the former bill, according to the allegations of the present bill, was not litigated in a *bona fide* way, since, as charged, after the complainants in that case had taken sufficient testimony to show that the allegations of the bill were true, they then without any legal ground or reason abandoned the suit, upon an agreement of the defendants thereto to assume and pay all of the costs. In addition to this, it is alleged in the present bill that the dismissal was really brought about through the instrumentality of the La Follette Coal, Iron & Railway Company and the Co-operative Store Company of La Follette, which two concerns are charged in other portions of the bill with having engaged in the wholesale bribing of voters and in other fraudulent practices in connection with the attempted removal of the county seat; and it is more than intimated that the influence of the two

concerns in inducing the complainants in the former bill to dismiss it was a sinister influence.

While it is proper and just that even the rights of the public of and concerning any special matter should be concluded by one fair litigation, in which the matters involved were faithfully presented and considered, it should be emphasized that the litigation must be *bona fide,* fair, and honest from the beginning to the end. Those who assume as citizens and taxpayers to stand forth as the champions of public rights and the conservators of the interests of all other citizens and taxpayers standing in the like case must discharge their voluntary trust with candor and with such reasonable skill as to enable the court to see that there has been no such gross negligence in the conduct of the cause as would be equivalent to a fraudulent surrender of the rights involved in the controversy and no such blundering abandonment of acquired advantages as would justly sustain an imputation of fraudulent purpose or gross incompetency on the part of those in charge of the public's case. In short, before the rights of the public are concluded, there must be a reasonably fair presentation of the case to a court of competent jurisdiction, and a consideration and determination of the matter by the court.

Under no other rule can the rights of the public be adequately protected in the class of cases we are considering.

People who assume to appear for the public in such cases as parties complainant, in the capacity of citizens and taxpayers, have, of course, the option to abandon the position assumed, if they see proper, and make such terms as to costs and expenses as they may be advised, but in so doing they do not act for or bind the public, but only themselves.

Aside from reasonable and *bona fide* agreements as to evidence, made during the progress of a cause, they cannot conclude the rights of the public by their agreements with adversary interests.

The foregoing presents what we deem the fundamental principles that should control in the conduct of this class of cases.

The case before us presents a vivid illustration of the impropriety of the opposite course. Not only, according to the allegations of the bill, was the case of the public given away after it had been fully established by the testimony, or abandoned under the operation of sinister influences, but by virtue of such agreement a thing has been accomplished—the removal of the county seat of a county—by the consent of 61 people, complainants in the former bill, which, under the constitution of the State, can be brought about only by the vote of two-thirds of all the qualified voters of the county. Any course of conduct that so eventuates needs only to be stated to expose its unsoundness.

We are referred by counsel to the case of *Fry* v. *Taylor,* 1 Head, 594, wherein it was held that upon a con-

test to settle the validity of a will all parties in interest were bound, although the judgment of the court below was affirmed in this court by agreement of the parties, it not appearing that the agreement was fraudulent; and that a suit to contest a will was a proceeding *in rem* and binding on all parties in interest, whether parties to the issue or not. This case, however, is not authority for the proposition to which it is cited, nor does it contravene the general principle; for, said the court, after stating there was no ground upon which to impute fraud: "We are authorized to believe that the contestants, despairing of being able to reverse the judgment of the circuit court, concluded to make no further resistance and agreed to an affirmance. This is often the case, and should be more frequently, when attorneys can find no ground to base a plausible argument upon for a reversal."

There are two other questions yet to be considered. They are made in the demurrers which were overruled by the chancellor, and while they were not brought up to this court, as such, by the appeal, and cannot, therefore, be considered from that standpoint, yet they may be considered as collateral to and arising out of those already discussed.

Both are bottomed on the fundamental question of jurisdiction.

In respect of the first of these questions, it is insisted that the bill presents the case of a contested election, that jurisdiction of such matter is purely statutory, that

no statute gives jurisdiction of such matter to the chancery court, and that under section 6063 of Shannon's Code the circuit court is made the final recipient of all unappropriated jurisdiction. In respect to the second of these questions, it is insisted that the chancery court has no jurisdiction to inquire whether two-thirds of all the qualified voters of the county voted in favor of the removal of the county seat, because, it is said, the bill shows that the county court settled that matter, and its decision is final.

As to the first of these questions: The case falls within the principle of *Winston* v. *Tennessee & Pacific R. R. Co.,* 1 Baxt., 60. The occasion of the interference of the court in that case was to declare void the subscription of a county to a railroad enterprise, because a constitutional prerequisite, the consent of the people of the county by the required majority, had not been obtained. Here the jurisdiction of the court is invoked on the same ground to prevent the removal of a county seat. So the underlying principle is the same in each case, although the special occasion that called it into exercise is different. As said in the authority referred to, such controversies do not fall under the classification of contested election cases at all. They fall, on the contrary, under that class of cases wherein the court restrains public officers from the exercise of unconstitutional powers. *Bradley* v. *Commissioners,* 2 Hum., 428, 37 Am. Dec., 563; *Ford* v. *Farmer,* 9 Hum. 154; *Gotcher* v. *Burrows,* 9 Hum. 595; *Bridgenor* v.

*Rodgers,* 1 Cold., 258; *Cocke* v. *Gooche,* 5 Heisk., 294; *Stuart* v. *Blair,* 8 Baxt., 141, 147; *Bouldin* v. *Lockhart,* 1 Lea, 195; *Humphreys Co.* v. *Houston Co.,* 4 Baxt., 593; *Lynn* v. *Polk,* 8 Lea, 121, and *passim; Trading Stamp Co.* v. *Memphis,* 101 Tenn., 181, 47 S. W., 136; *Weaver* v. *Davidson County,* 104 Tenn., 315, 59 S. W., 1105. The case of *Patton* v. *Chattanooga,* cited by defendant's counsel, is not in conflict with the foregoing cases, as fully appears from the discussion of the question in the opinion.   108 Tenn., 221-227, 65 S. W., 414.   We need not repeat that discussion here, or further refer to the matter, except to say that the bill in the present case shows that there would be an increase in the taxes of the complainants because of the necessity of erecting new county buildings at La Follette, the proposed new county seat.

As to the second of the two questions last referred to, we think this is practically concluded against the defendants by the case of *Braden* v. *Stumph,* 16 Lea, 581. It is there held that the chancery court may go behind the findings of the county court, and determine for itself whether, in fact, two-thirds of the qualified voters of the county voted in favor of the removal.   It is true there is some apparent ambiguity, in respect of this matter, in the original opinion delivered in the case; but, when that opinion is read in connection with the opinion delivered on the rehearing, the decision of the court is seen to be in substance as just stated.   The form of statement adopted by the county court, copied into the opin-.

ion in that case, was equivalent to a finding that two-thirds of the qualified voters of the county had voted in favor of the removal.   Yet it was held that this matter might be reinvestigated in the chancery court.   This, too, is the necessary result of the point previously established in *Bouldin* v. *Lockhart,* 3 Baxt., 262, 274-276, that the power of the county court in the premises was not judicial, but legislative, and that that court had no power to purge the polls, and the further point, established in *Bouldin* v. *Lockhart,* 1 Lea, 195, that the power of the county court, treated as legislative, was subject to revision.

There are other points made in complainants' assignment of errors to the effect that the chancellor erred in dissolving the injunction, dismissing the bill, and taxing the complainants with the costs, and awarding a reference for damages on the injunction bond; and it necessarily follows, from what has been already said, that these assignments must be sustained.

There are still other assignments of error, based upon the action of the chancellor in so modifying the injunction as to permit the courts of the county to be held at La Follette pending the litigation, and in increasing the penalty of the injunction bond to $5,000; but no objection as to any of these matters was brought to the attention of the chancellor when he granted the special prayer for an appeal, and they were not included therein.   Therefore they cannot be considered upon the present hearing.

Lindsay v. Allen.

It results that the decree of the chancellor will be modified in respect of the several grounds of demurrer as above indicated, and that his decree must be reversed in so far as it dismisses the bill and in the other respects above indicated, and the cause must be remanded for further proceedings.