ROLLER *v.* BURROW *et al.* (two cases).

(*Nashville*, December Term, 1942.)

Opinion filed November 20, 1943.

On Petition to Rehear February 5, 1944.

SUSONG, PARVIN & FRAKER, of Greeneville, for complainant.

H. H. HAYNES, SR., CURTIN & HAYNES, and J. D. BAUMGARDNER, all of Bristol, and GEO. F. DUGGER and J. MALCOLM SHULL, both of Elizabethton, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

As both parties have filed petitions for *certiorari,* which was granted and arguments heard, the parties will be referred to herein as complainant and defendants, in accordance with their status in the Chancery Court. Two actions are involved in this appeal. One, an action by Will Roller, for the use and benefit of D. R. Bacon (to whom he had made an assignment), for rents and profits due him for the operation of a farm, under contract with John D. Thomas for whose estate the defendants were administrators. Second, an action by Will Roller for 115 shares of stock in the Sevier Terrace Realty Company, which stock, although standing in the name of John D. Thomas at the time of his death, complainant, in his original bill, claimed as his property. The first action will be referred to herein as the ''farm suit'' and the second as the ''stock suit.''

After the original bill was filed and complainant had taken part of his proof in the "farm suit", a compromise was effected under the following circumstances, as found by the Court of Appeals in its opinion, from which we quote (complainant is the appellant and defendants are appellees):

"Counsel for the respective parties then began negotiations toward settlement of both lawsuits. These negotiations did not materialize and part of appellant's (complainant's) proof had been taken in the 'farm profits' case when the parties met in Bristol to cross-examine Will Roller, Jr., in the 'farm profits' case. At this time counsel for appellees (defendants) offered appellant and his counsel Five Hundred ($500.00) Dollars to settle both cases. He informed the appellant and his counsel if he had to go into the proof further all offers of settlement would be off. Appellant and his counsel retired to another room and soon returned with a counter offer of Six Hundred ($600.00) Dollars. After some further talk a figure of Five Hundred Seventy Five ($575.00) Dollars was agreed on. Counsel for appellees, in the presence of appellant and his counsel, phoned his clients and obtained their consent. Counsel for appellees, in the presence of appellant and his counsel, then dictated orders on non suit with full prejudice in each case. The order in the 'farm profits' case showed a 'compromise settlement' had been agreed upon. The order in the instant case did not show a 'compromise settlement.' This difference was at the suggestion of counsel for appellant—made in his presence —because of a judgment then pending in another case against appellant. They had agreed if appellant had any recovery in the instant case a certain portion of the recovery was to be applied toward this judgment.

"The non suit orders were approved by counsel for all parties. Counsel for appellees took them to Elizabethton with him where they were signed by the Chancellor. They were then sent back to counsel for appellant along with the check for Five Hundred Seventy Five ($575.00) Dollars. Out of this check counsel paid the costs in each case and retained a small fee and mailed a check for the remainder to appellant at Morristown. These orders were entered on May 20, 1941. The December term of court adjourned court in course May 28, 1941. The next term began on June 2, 1941."

Before complainant received the check for settlement, a chancery term had ended. When he received the check, he promptly telephoned his solicitors that a mistake had been made; that he had agreed to settle only the "farm suit;" that he had not intended or agreed to settle the "stock suit." The complainant then employed new solicitors, who attempted to secure an agreement to set aside the decrees as entered. When such agreement was not to be had, the solicitors filed a petition to set the decrees aside and to reinstate the causes. The chancellor permitted the petition to be filed, but reserved his opinion on the effect of the fact that between the time of the entry of the decrees and the time of the filing of the petition, a chancery term had ended.

After proof was taken and a hearing had on the petition to rehear, the chancellor gave judgment for the defendants and dismissed both bills. From the order of dismissal, the complainant prayed and perfected an appeal to the Court of Appeals. This Court, while holding that the chancellor was without jurisdiction to entertain the petition to reinstate, as such, held that it was in effect, a petition for writ of error *coram nobis,* and reversed

the decree of the chancellor as to the "stock suit," holding that Roller had not agreed to its compromise; that his solicitors were not authorized to take a non suit without his authority and remanded the case to the chancery court. From this judgment of the Court of Appeals, both parties have filed petitions for *certiorari* here, with assignments of error, and both writs were granted.

The case has been ably argued and exhaustively briefed in this court. We will consider first the petition and assignments filed by the complainant, Will Roller, Jr.

He makes a single assignment of error on the opinion of the Court of Appeals, which is in effect that the Court of Appeals was in error in holding that the petition to reinstate was filed too late, since decrees entered at the former term were chambers decrees and the petition to reinstate was filed within twenty days after the entry of such decrees. Complainant insists that the provisions of statutory law for appeals from decrees entered in chambers are different from the provisions of statutory law with regard to appeals from decrees entered in term, or at regular sessions of the chancery court. The pertinent provision of the Code with reference to appeals taken from decrees entered in chambers is:

Section 10506. "Right of appeal regulated.—(1) If any of the parties are dissatisfied with decrees entered under the provisions of this article, and the chancellor in the exercise of his discretion permits an appeal therefrom, *they shall have the same right of appeal as if the cause were heard in term*; provided, that said appeal be prayed at the time, *or within twenty days after,* the decree is rendered by the chancellor; and the chancellor shall have the right to allow the appellant time, not to exceed thirty days, in which to perfect appeal by giving

bond or otherwise complying with the law and the terms of the decree.

"(2) Such order granting appeal shall be indorsed by the chancellor as are other orders, and shall in like manner be transmitted to and entered by the clerk and master; provided, that in appeals prayed and granted at chambers the usual rules as to bills of exceptions shall apply."

And the section of the Code in which it is argued a different provision is made for those appeals taken from decrees entered in term is:

Section 9047. "Time is allowed for, appealing and giving appeal bond, or to take the pauper's oath.—When an appeal or appeal in the nature of a writ of error is prayed from a judgment or decree of an inferior court to the court of appeals or supreme court, the appeal shall be prayed and appeal bond shall be executed or the pauper oath taken within thirty days from the judgment or decree, if the court holds so`long, otherwise before the adjournment of the court, but for satisfactory reasons shown by affidavit or otherwise, and upon application made within the thirty days, the court may extend the time to give bond or take the oath in term or after adjournment of the court; but in no case more than thirty days additional."

It is insisted that the provision in section 10506 that "said appeal be prayed at the time, or within twenty days after, the decree is rendered" gives the prospective appellant the right to appeal within twenty days, no matter whether during that twenty days the chancery term ends or not; that therefore, in the instant case, since the decrees were entered on the 20th day of May and the petition to reinstate was filed on June the 9th of the succeeding month, less than twenty days had elapsed,

and the petition was filed in time and the chancellor had jurisdiction to vacate the former decrees.

It seems to us that an historical examination of the development of the jurisdiction of the chancellor in chambers has some significance in determining the merits of this assignment of error.

The jurisdiction of the chancellor in chambers was limited in the Code of 1858 (sec. 4410 et seq.) to the entry of such interlocutory orders as might be necessary to prepare the case for hearing in term. It will be observed that no provision for appeal is made in the Code of 1858 from such proceedings, evidently because none of them were final and none of them disposed finally of the rights of litigants.

This jurisdiction in chambers has been enlarged and extended by successive Acts of the Legislature. The first of these was Chapter 248 of the Public Acts of 1903, which authorized a chancellor in chambers, by consent of the parties, to hear and determine certain matters regarding the preparation of causes for final hearing. That Act provides that the chancellor in his discretion may allow an appeal from an interlocutory decree *if application be made at the time the decreee is pronounced.* The case of *Lindsay* v. *Allen,* 112 Tenn., 637, 82 S. W., 171, decided that these appeals were not of right, but were only such as the chancellor in the exercise of his discretion might allow.

The second of these Acts is Chapter 427 of the Public Acts of 1905, passed as an amendment of the Act of 1903. In it, the chancellor's jurisdiction in chambers was further extended to final hearings in certain cases, and the only amendment as to appeals was that by section 3 of the Act of 1905, application for an appeal might be prayed at the

time of the entry of the decree, or *within twenty days thereafter.*

In the case of *Bauhard* v. *Truluck*, 125 Tenn., 120, 122, 40 S. W., 298, Chief Justice Shields delivering the opinion of the court, says:

"The act of 1905 authorizes the chancellor, by consent of parties, to hear and determine causes upon the merits at chambers and pronounce final decrees therein. It contains no limitation upon proceedings to review such decrees. *Therefore all proceedings in error open to the losing party in causes finally determined by the court in regular session are available, where final decrees are entered at chambers, under this act.* The reasons for the limitation contained in the first act, and for holding it inapplicable to the amendment, are obvious." (Emphasis ours.)

Finally, the provisions for appeal as contained in these two Acts, were codified in Code section 10506 and the right of appeal as construed in *Bauhard* v. *Truluck, supra,* is made definite by the legislative enactment of the following sentence in that section of the Code:

"They shall have the same right of appeal as if the cause were heard in term."

■■ It is quite clear from the history of the legislation that at no time was it the intent of the Legislature to give greater rights to appellants from decrees in chambers than were allowed those in term, or at regular session. A jurisdiction in chambers and a right of review, which were non-existent under the Code of 1858, are for the purpose of expediting and speeding the cause in chambers, gradually developed to approximate, within defined limits, the same jurisdiction and right of review provided for causes regularly heard in term.

To accept the construction for which complainant contends in his assignment of error and permit a longer delay for appeal from chambers decrees than is allowed for those handed down in term, would have the very opposite effect from that for which the legislation was enacted and chambers jurisdiction enlarged. Such construction would delay, rather than speed and expedite, litigation. It is quite clear in considering the amendatory Act of 1905 that the provision for the twenty days was made because more complicated matters of litigation were there authorized to be heard in chambers, and additional time might well be needed for the preparation of the appeal, or for deciding that such appeal was justified or necessary.

We think, therefore, that the rule is the same for appeals from chambers decrees as for those appeals taken from decrees entered in a regular term; that unless application is made for the thirty-day extension (which both sections 10506 and 9047 permit the chancellor to grant) after the entry of the decree and before the end of the term, that with the end of the term, the decree becomes final and beyond the jurisdiction of the chancellor. We feel that Code section 8980: "A rehearing can only be applied for at the term of the court at which the decree sought to be affected is rendered," is applicable to chambers decrees as well as to those rendered in term.

In the present case the decrees were entered on May 20, 1941. The term ended on May 28, 1941. The subsequent term opened on June 2, 1940, and the petition to reinstate was not filed until June 9, 1941. The chancellor was without jurisdiction to vacate the former decrees, or reinstate the causes when the petition was filed.

He should have dismissed the petition according to the motion therefor.

Unless we accept the expedient suggested by the Court of Appeals and treat the petition to reinstate as a petition for writ of error *coram nobis,* it must result that the decrees, or voluntary non-suits, taken with prejudice in May, 1941, were final and these appeals ineffective to change them.

Holding that the petition to reinstate should be treated as a petition for writ of error *coram nobis,* the Court of Appeals says in its opinion:

"In substance and in form, it meets the requirements in every particular of such a writ. All proceedings below were conducted by appellees, appellant and the Court, as would be done if such a writ had been applied for."

The defendant makes this action of the Court of Appeals his 9th assignment of error and we are constrained to find with him, that such position under the law and the pleadings is untenable.

The petition to reinstate does not formally comply with the requirements for a writ of error *coram nobis,* because no bond was given at the time of its filing and such omission was held fatal to a petition for writ of error *coram nobis* in the case of *Elliott* v. *McNairy,* 60 Tenn., 342. But we think the petition to reinstate was neither in form nor in substance a petition for writ of error *coram nobis,* because it contained many matters which could not have been conceivably presented under application for such a writ. In effect, the entire transcript here below us was built up on issues raised by the allegations of the petition to reinstate, yet it is well settled that the scope of the writ of error *coram nobis* is very limited. It creates an addition to, or supplement of, the record already made and upon a trial *de novo* of

these new matters, a change in the decision made on the old record *may be* brought about.

■ The opinion of Justice GREEN *in Wright & Braden* v. *Curtis,* 145 Tenn., 623, 625, 237 S. W., 1103, makes this clear. In this case, there was a demurrer to a petition for writ of error *coram nobis* and an appeal from the order overruling the demurrer. It was insisted that the appeal brought up the entire case. The court denied this position, saying:

"But the scope of a writ of error *coram nobis* being limited—not going to the whole case—an appeal from an order disposing of the same brings up only part of the case. It only brings up for revisal the action of the court on the petition."

So under the provisions of Code, section 8978, proof of the issue of fact, which would change the decree is that of infancy, and under the holding in the case of *Norris* v. *Wilber,* 60 Tenn., 365, that of coverture.

■ ■ Here the decree entered by the chancellor in the "stock suit" reads that the cause came on to be heard *"by agreement of all parties."* The petition to reinstate denies this part of the record, which may not be done by the writ of error *coram nobis.* If the issue of coverture had been made and passed upon at the first hearing in the case of *Norris* v. *Wilbur, supra,* it is evident from the language of Code, secs. 8977, 8978, that the court could not thereafter change its first finding on the consideration of a petition for writ of error *coram nobis.* Where the error of fact relied upon to reverse or amend a former decree, was judicially considered at the first hearing, the writ of error *coram nobis* is not the appropriate remedy and will be denied. *Patterson* v. *Arnold,* 44 Tenn., 364, 369; *Crawford* v. *Williams,* 31 Tenn., 341, 347.

 In the present case the chancellor found in his decree that all parties had agreed. He could not later find that they had not, for the writ of error *coram nobis* must not be used to contradict a fact passed on at the first hearing. *Davis* v. *Robertson*, 165 Tenn., 609, 56 S. W. (2d), 752; *Carney* v. *McDonald*, 57 Tenn., 232; *Memphis, etc., Institution* v. *Hargan*, 56 Tenn., 496; *Bolling* v. *Anderson*, 1 Tenn. Ch. (Cooper), 127.

Therefore, we feel that the assignments of error of complainant must be overruled; the 9th assignment of error of defendant must be sustained; the opinion of the Court of Appeals reversed and the chancellor's decree, dismissing the petition to reinstate, affirmed for the reasons herein stated. Since this disposes of the case, we feel it unnecessary to consider defendant's other assignments of error, and we have considered fully the only assignment made by the complainant. The complainant is taxed with the costs.

## On Petition to Rehear.

 The only grievance presented by the petition to rehear is that in the former opinion of this Court we undertook a construction of Code section 10506(1) when no construction was necessary and when the language of the legislative Act was clear and left no room for doubt. With this contention we cannot at all agree.

A reading of section 10506(1) reveals (and we italicized these portions of the section in our opinion) that the Legislature enacted that with regard to appeals from Chambers decrees, "they (appellants) shall have the same right of appeal as if the cause were heard in term;

provided, that said appeal be prayed at the time, or within twenty days after, the decree is rendered by the chancellor.''

In section 9047 which regulates the time for taking appeals from decrees in term, there is no mention of the period of twenty days.

Therefore under the issues presented by the case before us, it became necessary for us to construe section 10506 (1), and say whether that clause of the section which gave to the appellants from Chambers decrees the same rights as appellants from decrees in term, should prevail over the proviso giving twenty days from the date of the entry of the decree, as was insisted by petitioner-complainant. We think it clear beyond serious argument, that a construction of the statute was imperative, to decide the issues before us.

It is then insisted, in the Petition to Rehear, that the right of appeal, and the time within which the right is to be exercised, are separate and distinct. In other words, that in the first clause of the section above quoted, the Legislature gave appellants from Chambers decrees the right to all forms of appeal that were open to appellants from decrees in term; and that in fixing the twenty-day limit in the latter part of the section without modifying it by inserting the words found in section 9047, ''if the court holds so long, otherwise before the adjournment of the court'', the Legislature meant to give appellants from Chambers decrees twenty days from the entry of the decree, whether the court held so long or not. If the ''twenty days'' was to be allowed the appellant from Chambers decrees in all events, and not under the condition that the Court ''holds so long,'' the final provision of section 10506(1) of the Code would have no meaning or application. This provision is,

". . . and the chancellor shall have the right to allow the appellant time, not to exceed thirty days, in which to perfect appeal by giving bond or otherwise complying with the law and the terms of the decree."

The clear application of this provision is—that if the term is about to end within the twenty days, the Chancellor may enter an order extending the time for perfecting the appeal, as he may do under section 9047.

The contention that since there is no limitation to a current term an appellant from a Chambers decree shall have "twenty days" in any event without limit, is ingenious but entirely overlooks another section of the Code which we think applicable to decrees in Chambers and decrees in term, and which was so held in our former opinion. This section 8980 is:

"A rehearing can only be applied for at the term of the court at which the decree sought to be affected is rendered."

This is a general provision of the Code applicable both to Chambers decrees and to those entered in term, and would, without our construction of section 10506 (1), which we reaffirm, prevent an acceptance of the insistence of petitioner.

The petition to rehear is denied.