## INMAN v. FOX.

Eastern Section. July 25, 1925.

No petition for Certiorari was filed.

1. **Judgment. Motion to dismiss writ of error coram nobis may be made at any term, unless expressly waived.**
   A motion to dismiss writ of error coram nobis may be made at any term, unless the irregularities are expressly waived.

2. **Appeal and error. Error in denying motion to dismiss writ of error coram nobis not reversible error where party lost no rights thereby.**
   Error in disallowing motion to dismiss writ of error coram nobis as filed too late, held not prejudicial where, under agreement of counsel appearing by order of court, questions of both law and fact could be made under the answer, and the court by agreement heard the whole matter together and considered the question raised by the motion, and such question is subject to review on appeal from order vacating the judgment and rendering judgment for defendants.

3. **Easements. Use of one road negatives implied reservation or grant of another, but does not negative acquirement of other ways by adverse user.**
   The fact that owners of adjoining lands, formerly part of one tract, used one road as a way of egress and ingress, negatives the right of implied reservation or grant of way over another road, but does not negative the right of one owner to acquire other and additional ways by adverse user.

4. **Easements. Permissive use of road not proved by showing no objections made.**
   That defendant permitted owner of adjoining land and his predecessors in title to use road without objection is not proof that such was permissive.

5. **Easements. One using a road adversely is not defeated by owners implied permissive use unless claimant agreed to abandon adverse claim.**
   The adverse user of a road over adjoining lands cannot be defeated by the doctrine of implied permissive use because the owner of adjoining land made no objection unless the adverse claimant consented to abandon his adverse claim and use by permission.

6. **Judgment. Writ of error coram nobis makes issue but is not evidence.**
   A petition for writ of error coram nobis is treated as an original bill in the nature of a bill of review and makes only an issue and is not evidence.

7. **Judgment. Burden on petitioner for writ of error coram nobis to prove prerequisites.**
   The burden is on petitioner for writ of error coram nobis to establish that because of error of fact he was precluded from making defense without any negligence or fault on his part, and that he had a good defense which

would defeat complainant's bill, and until .such facts are shown the final judgment remains in full force and effect, and carries with it every legal presumption incident to a judgment.

**8. Judgment. Failure of counsel to know or learn time of term of court held not to warrant writ of error coram nobis.**
Where counsel for defendant lived but 20 miles from place where bill filed and he did not know and did not learn when court opened and did not answer, held not evidence of such mistake as would warrant writ of error coram nobis to vacate judgment.

**9. Equity. Litigants must be diligent in prosecution or defense of their suits.**
The law holds persons to diligence in the prosecution or defense of their suits in court, and their attorneys are bound to know and observe the rules of practice and pleading.

**10. Judgment. Decree pro confesso not vacated on writ of error coram nobis unless petitioner was diligent.**
A writ of error coram nobis will not be granted .to vacate a judgment on decree pro confesso, where petitioner was not diligent in presenting timely defense; failure to remember the times fixed by law for holding court not being a good excuse.

Appeal from Chancery Court, Cocke County; Hon. M. H. Gamble, Chancellor.

Reversed.

Ernest R. Taylor, of Morristown, and Everett Greer, of Newport, for appellant.

W. T. Coleman, of Morristown, and W. O. Mims of Newport, for appellee.

PORTRUM, J. J. M. Inman instituted this suit in the chancery court of Cocke county, on the 3d day of July, 1919, for the purpose of enjoining the defendant, John Fox, from obstructing an easement of way, or private road, leading from the complainant's land over the land of the defendant, and then onto the land of another, to where the roadway intersects with a public road known as Inman's Bent road, alleging that he had acquired the right to use said road by reason of an implied reservation growing out of the partition, while the land was in one boundary and owned by one person, and partitioned between the succeeding owners, who were the predecessors in title of both the complainant and the defendant, and alleging further that said roadway was an appurtenance or hereditament which passed with the land, and, as a third ground, that the complainant and his predecessors in title own the roadway and the right to use the same by reason of their adverse, continuous, and uninterrupted possession and use for the prescriptive period, and in law a grant is presumed therefor.

An injunction was issued as prayed, and was served upon the defendant, along with process, on the 3d day of July, which was the day the bill was filed, and was returnable to the first Monday in August, 1919. The term of the chancery court, as fixed by law,.

is held on the fourth Monday in August, and the defendant failed to appear and defend upon the first day of the term, he being in default on that day, and on each day of the term, every day of the term being a rule day; so upon the last day of the term a pro confesso was taken and entered against the defendant, because of his default, and the case was heard upon the pleadings and the pro confesso, and a final decree entered adjudicating that the complainant owned the right of way in question, describing it, first, by implied reservation, and, second, that he had acquired an easement by reason of his adverse, open, continuous, and uninterrupted use of the road way, for the prescriptive period of 20 years; and the injunction inhibiting the defendant from in any way obstructing said roadway was made permanent, and the defendant taxed with the cost.

On the 10th day of February, 1920, the defendant, John Fox, applied to the court and filed a petition for a writ of error coram nobis, alleging that the pro confesso was taken against him and the final judgment entered because of a mistake of fact of his solicitor, and that he misapprenhended the time of the holding of the chancery court in Cocke county, thinking the court met on the fourth Monday in September, and had advised the petitioner that he had until the first Monday in September to make defense to the bill; that he prepared and filed an answer the day following the adjournment of the term of court and the entry of the final decree, but he was then ignorant of the that the decree had been announced, but was informed that a term of court had been held; he further alleging that his situation was brought about through no fault of his nor his counsel, but by reason of the mistake of fact aforesaid, and that he had a good and valid defense to make to the allegations of the bill, and that his defense was true and would totally have defeated the relief prayed in the bill. A fiat was granted, the petiton filed, notice given, and by agreement of the parties an order was entered on the 23d day of February, 1920, which was a day of the regular term, extending the time of the defendant to the petition to answer for 30 days, and the petitioner consenting that said answer may raise all questions of law and fact under the petition, and staying the payment of cost in the original case until this petition was determined. Within the time the answer was filed, the sufficiency of the allegations of the petition was questioned, and the case put at issue. Proof was taken touching the whole controversy, and the case came on for trial at the August term, 1923, when the defendant entered a motion to dismiss the petition because the petition did not set up any sufficient reason for not making defense to the bill. The court overruled the motion, being of the opinion, as stated, that said motion came too late, the record showing the petition was filed on the 10th day of February, 1920, and the answer was filed on the 5th day of May, and proof was taken soon thereafter on the issues. The motion

was therefore overruled and disallowed, when the case was called for hearing and was heard upon the petition for writ of error coram nobis, the answer thereto, proof taken and filed, the original bill, exhibits, and the record at large, and by agreement of the parties the petition for writ of error coram nobis and the original cause were heard together. After due consideration, the writ of error coram nobis was sustained, the former decree recalled, vacated, and set aside, the pro confesso set aside, the cause as made by the original bill and answer thereto, proof on file and record at large, from all of which the court was of the opinion that the complainant was not entitled to any relief, the bill was dismissed, and the complainant in the original bill taxed with the cost. From the decree of the chancellor the original complainant has appealed and assigned errors.

The appellant, evidently laboring under the impression that the case as made by the petition, was distinct from the original case and was therefore the hearing of two independent inquiries, has treated the appeal in the same light, and assigned six errors to the action of the court in issuing and sustaining the writ, and briefing and arguing these assignments, which are followed by additional assignments to the action of the court taken in the original case. Notwithstanding this course taken by counsel, it is convenient that the assignments be considered together as far as practicable.

Counsel stated the first six assignments of error presented two questions, and in this they are correct: (1) The chancellor was in error in his refusal to consider and in disallowing the motion challenging the sufficiency of the allegations of the petition assigning as the reason the motion came too late; and (2) that the allegations of the petition and the proof in support of the issues raised were insufficient in law to warrant the court in vacating the judgment because of surprise, accident, or a mistake, without fault or negligence on the part of the petitioner.

The three additional assignments raise, among other questions, the right of the complainant to an easement by prescription, and, in substance, if not in form, call in question the petitioner's want of legal defense necessary to entitle him to the relief sought.

The chancellor was in error in declining to consider the motion to dismiss the writ of error coram nobis. His reason that it came too late is not supported by the authorities; the rule being that the motion may be made at any time unless the irregularities are expressly waived.

"It is now insisted that this motion came too late; that the petition in a case of this kind, like a petition for certiorari seeking a new trial in a case, serves only to bring the case into court, and, having served this purpose, can no more be looked to; and that, if the petition, on its face, shows insufficient grounds for

granting the writ, then a motion must be made at the first term of the court, or it is too late, and the case stands for trial on its merits, as presented in the more formal assignment of errors made by petitioner.

"This is a total misapprehension of the nature of this proceeding. It is not to bring up the former case, but a new suit commenced to reverse a former judgment, and the grounds on which the reversal is asked must be stated in the petition, and these grounds must be the basis of the issue to be presented in a more formal assignment of errors, to be made under the direction of the court, as provided for in section 3115 of the Code. If this were not so, the petition might present one state of facts, as the ground for the writ of error coram nobis, and then the party present a different one entirely, as the cause for reversal of former judgment, on which to form an issue. No such departure from the grounds stated in the petition is contemplated. The proceeding is more nearly analogous to the proceeding by certiorari and supersedeas to quash an execution, where the petitioner can only rely on the matter alleged in his petition. [Hollins v. Johnson], 3 Head [Tenn.] 346. If, therefore, the matter of the petition is insufficient, or from its face it appears to have been granted contrary to law, there is no reason why advantage may not be taken of the defect by motion to dismiss, at any term of the court, unless there has been an express waiver of irregularities." Elliott v. McNairy & Co., 1 Baxt. (Tenn.), 342, 346.

But the court's error appears to be harmless, for the reason that under the agreement of counsel appearing by order, supra, by which questions of both law and fact could be made under the answer, and the court, by agreement as recited heard the whole matter together, then the question raised by the motion was considered by the court, and is subject to review by reason of the appeal and the assignments.

The treatment of the sufficiency of the proceedings necessitates a statement of the facts to some extent. They are: Forty or more years ago the land owned by the defendant and the complainant constituted one body, and was not contiguous to the main thorough-fare or public road-known as Inman's Bent road. There was a mill road which has been used for years, and kept up to an extent by voluntary labor, running from the Inman's Bent road across a track of land to a point where it intersected with the original track of land in question, crossing this boundary by passing over a ridge in a low gap and extending into the lands of others to the mill and probably to the river and farther. In the division of the said tract of land between the complainant's and the defendant's predecessors, this road ran through the share of defendant, Fox, but touched or

abutted, at the northeast corner, the share of Inman. This road appears to have been in existence prior to the partition. At the point on the ridge referred to, where the mill road crosses the low gap, another roadway projects in a southeastern direction following the backbone of the ridge and passing over the defendant's share and then over the lands of another to a point on the ridge where it intersects with another public road. And this road is the road in question in the lawsuit. The "Chuckie" river forms the northern boundary of the complainant's track. Some distance west is a ford in the river, and the road from this ford makes a semicircle passing entirely around complainant's land, and the defendant's for that matter, except he may touch it at one point, and finally intersecting the Inman's Bent road. A person traveling from complainant's land and desiring to cross the river at the ford by traveling the mill road to the low gap in the knob, and then following the ridge road to its intersection with the ford road, will save a quarter of a mile in a distance of two miles if he travel the mill road to its intersection with the Inman's Bent road and then around the ford road to its intersection with the ridge road. The complainant owns about 25 acre of land, has a tenant house and a tenant upon the tract. His tract is completely cut off from any public road, and his egress is over the mill road in an eastern direction until he reaches the low gap in the ridge, at which point he may follow the mill road traveling in a northern direction to the Inman's Bent road, or he way follow the ridge road traveling in a southeastern direction to its intersection with the so-called ford road. In the year 1919, the owners of the land over which the mill road ran closed the mill road by putting a substantial fence across the road on the property line of the defendant, Fox, and the party who closed the road. The closing of this road cut off the complainant's egress and ingress over this route, and about the same time the defendant, Fox, determined to close the ridge road, and the closing of the ridge road completely shuts out and destroys complainant's egress and ingress to and from his tract of land. The defendant, Fox, thinks he has the right to close this road, and he assigns as the reason for exercising this right that it takes land to lay out a road, and the closing of the mill road gave Cooper, the landowner who closed it, an amount of additional land, and that Fox was under no obligation to permit a road to go over his land for the benefit of Cooper's land. Another reason developed from the record is that Fox desires to purchase the land of the complainant, Inman. This purchase can be more effective brought about by bottling Inman in. It appears from an inspection of the plat that the ridge road, since the closing of the mill road, is the defendant Fox's sole way of ingress and egress, and to get out he passes over the land of another. It must be assumed then that he does not propose to close himself out, but his purpose is to obstruct the complainant's use of

the road, at a point not inconvenient to him. The ridge road was first known as the bridle or riding path, and as such it existed for a great number of years, and was known by aged witnesses to exist more than 50 years ago. As time passed, the road evolved from a riding or bridle way into a passageway for wagons and other vehicles. It is shown to have been cut out and made more suitable for hauling timber and wood in the year 1881 or 1882, and has existed and been used as such up until the closing complained of. Complainant and his predecessors in title used this way and worked and maintained it to a certain extent, and have so used it for from 25 to 40 years, and their use was never interrupted until the obstruction was placed in the road by the defendant. The defendant Fox was asked by his counsel:

"Q. What is said road, and how came it there?

"A. Well, I don't remember about that road, Judge."

The defendant admits that he used the road some, but had not in a good while, as far down as the low gap, and he further admits that Cooper fenced up the mill road. The complainant, Inman, and his tenants traveled to and from the 25-acre tract of land by both roads (that is, the mill road and the ridge road), and he did not know how long they had so traveled the ridge road.

Many witnesses were introduced by the complainant showing that the ridge road had been opened and traveled for many years by the public, and especially by the owners of the lands in question. The defendant insists that his lands were uninclosed woodland. He admits that the roadway existed, and has existed for a long time; that he lived in the neighborhood and knew the land many years before he acquired the land. He says that other roadways existed through the land and were used for the purpose of getting out wood and timber. His defense is that the complainant's use, and the use of his predecessors in title, was a permissive use, and therefore complainant did not acquire a prescriptive right, and this is the defense he brings forward under his petition for the writ of error coram nobis to establish the fact that he was not only free from fault in not making defense to the original bill, but had a good defense thereto which would defeat complainant's right under the bill, his defense being, as above stated, that the defendant acquired no prescriptive right to the use of the roadway, because his use was a permissive right. He establishes this fact by proving that the land was uninclosed, that there were other roadways which he or any one else were free to travel, and that he (Fox) had never objected to this premissive use of the land during his ownership, which was for a period of some few years, until he decided to clear the land, and then he wanted to put an end to the permissive use. Is this a good defense, or has he shown that the complainant had not acquired a

prescriptive right? The fact that the mill road was used as a way of egress and ingress negatives the right of implied reservation or grant of way over the ridge road, but does not negative the complainant's right to acquire other and additional ways by adverse user; and the fact that the defendant, Fox, and his predecessors in title permitted the complainant and his predecessors in title to use the road without objection is not proof that the use is permissive. In cases of this kind, the right to prescriptive ways may always be defeated by an effective objection before the period of 20 years has run. Fox may have impliedly permitted Inman to use the roadway during Fox's ownership, but certainly this would have been ineffectual if Fox did not bring the knowledge home to Inman, and even then, if Inman was exercising an adverse claim and use, his user could not be defeated unless Inman consented to abandon his adverse claim and use by the permission of Fox.

The petition for the writ of error coram nobis makes only an issue and is not evidence. Hicks v. Haywood, 4 Heisk. (Tenn.), 598. The cause is treated as an original bill in the nature of a bill of review (Wills) v. Wills, 104 Tenn., 382, 58 S. W., 301), and the burden is on the petitioner to establish each of the prerequisites; that is, that because of an error of fact he was precluded from making defense, without any negligence or fault on his part, and that he had a good defense which would defeat the complainant's bill—that is, in this case the petitioner undertook to show that the complainant had not acquired a right of way by prescription. Until these facts are shown by the petitioner, the final judgment remains in full effect and force, and carries with it every legal presumption incident to a judgment, all of which must be overcome by the petitioner's proof. Hicks v. Haywood, 4 Heisk. (Tenn.), 598.

The petitioner has not shown that he is free from fault in his failure to comply with the rule and make his defense within the proper time. His proof showed that soon after being served with process, on the 3d of July, he employed an attorney in the city of Morristown, some 20 miles from Newport, where the bill was filed, and that the attorney, having in mind Mr. Gibson's rule, which is the rule of the statute, that the defendant was required to answer by the first Monday in August, but that no pro confesso could be taken against him until the first Monday in September, being unmindful that a term of the chancery court intervened in August, stated that his impression was that the term of court convened the fourth Monday in September, and further that he was confused in reference to the term because the Legislature had recently passed an act rearranging terms in certain of the East Tennessee counties in which he practiced. This was hardly a good excuse, for the reason that, if the Legislature had changed the terms, and he was aware of the act, it was all the more

his duty to make inquiry and ascertain just when the term convened. The regular August term is fixed by statute and has been since 1901, and by turning to the Code the time could have been ascertained immediately. If it was thought that the late statute changed this time to a time unknown to the solicitor, he was not justified in delaying the answer pratically 60 days, but should have answered at the time of his conference; his clint having a copy of the bill, or should have had, and the matters in issue being wholly in the knowledge of the client. No excuse is given for the fixing of the long delayed date for the return of the defendant to Morristown to answer the bill; the date being the 27th of August, approximately 60 days and only 3 or 4 days before a rule day, except it is shown that the counsel had to be in Hawkins county on the fourth Monday in August in conference about an important suit. The defendant's counsel should have answered the bill prior to his trip to Hawkins county, or have given a good and sufficient excuse for not doing so. This was not done. It is not contemplated in law that a defendant has, as a matter of right, the whole of the time intervening from the rule day upon which he is required to appear and the succeeding rule day. He was cited to appear and defend on the first Monday in August, and the complainant was entitled to take a judgment against him upon the next or any intervening rule day before defense.

"The law holds persons to diligence in the prosecution or defense of their suits in court, and the rules of practice and pleading, which their attorneys are bound to know and observe, afford them ample protection against undue advantage." Brandon v. Diggs, 1 Heisk. (Tenn.), 477.

It is insisted that the petitioner's solicitor's lack of knowledge of the time when the court met was a mistake of law and not of fact, and therefore that he is not entitled to the writ. Would it have been an excuse had the petitioner said he did not know he had to file an answer? Then is there any difference for his attorney to say he knew he had to file an answer, but that he did not know he had to file it upon a certain date, which date is fixed by law? But, if this question be a question of fact, then it was a question that could have been ascertained upon reasonable diligence, and in this class of cases the parties are expected to, and required to, exercise at least such diligence as the ordinary man exercises. In the first place, there was no reason for delaying the answer to the 27th of August, even though a term did not intervene. The solicitor should have known the time of holding court, and could have known by looking to the Code, but, if in doubt, could have ascertained from the clerk and master at Newport by telephone, if he could not by making inquiry of his brother lawyers at his local bar. The court has said that a lawyer must exercise "all reasonable care." Bigham v. Brewer, 4 Sneed (Tenn.), 432.

Our cases have uniformly enforced a strict rule and required diligence on the part of the petitioner. The cases dealing with this writ, and supporting the conclusions above, are: Dunnivant v. Miller, 1 Baxt., 227; Mahalovitch v. Vaughn, 1 Baxt., 325; Patterson v. Arnold, 4 Cold., 364; Jackson v. Milsom, 6 Lea, 514; Dinsmore v. Boyd, 6 Lea, 689; Upton v. Philips, 11 Heisk., 215; Carney v. McDonald, 10 Heisk, 232; Thruston v. Belote, 12 Heisk, 249.

The appellee cites as authority for relaxation of this rule an opinion of the Court of Civil Appeals, styled Bolling & Power v. Huddleston & Turner, 8 Tenn. Civ. App., 339, in which it is said:

"That was a case applicable to the case at bar, in that therein the facts set up in the petition for the writ would have constituted a good defense, if properly presented upon the trial. However, the question in that case is the question in this trial as to whether or not the petition goes further and sufficiently shows that the failure of the petitioners to make their defense upon the trial in the circuit court was owing to surprise, accident, mistake, or fraud, without fault upon their part. It is difficult to lay down any hard and fast rule as to exactly what state of facts will bring a petitioner within this limitation. To more or less extent, every case stands upon its own facts. However, as already intimated, whenever it appears that the petitioner has a meritorious defense which he has for any reason failed to have an opportunity to make on the trial, we are inclined to the opinion that he is entitled to a construction as favorable as is consistent with the provisions of the statute of the allegations made by the petitioner by which he seeks to show surprise, accident, mistake, or fraud without fault."

We are of the opinion that the petitioner has not brought himself within the rule announced in that case. He and his attorney were in no way embarrassed, and the opposing parties made no representations to them, nor had any overtures of compromise been made. If failure to remember dates fixed by law for holding court is a good excuse for not defending and is ground for setting final judgments aside, then this petition, as far as this question is concerned, should be sustained, and all others of a like character, but, if this is not a good or legal excuse, then the petition should have been dismissed. We are of the opinion that the petitioner has not shown facts entitling him to file and maintain the petition, and the lower court was in error in sustaining it and vacating the final decree theretofore entered. His decree is reversed, and the former decree reinstated, and a decree to this effect will be entered in this court, the appellee, Fox, is taxed with the cost of both courts.

Snodgrass and Thompson, JJ., concur.