SOUTHWESTERN TRANSP. CO., INC., *v.* WATERS.

(*Nashville,* December Term, 1934.)

Opinion filed March 19, 1935.

CANADA & RUSSELL, of Memphis, for Southwestern Transp. Co.

JOHN W. McCALL and J. GRANVILLE FARRER, both of Memphis, for petitioner Mrs. J. B. Waters.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Plaintiff obtained a judgment in the circuit court of $5,000 as damages for the wrongful death of her husband, J. B. Waters, Sr., in a street intersection collision between a bus owned and operated by Southwestern Transportation Company and an automobile owned and being driven by her son, with whom his deceased father was riding. The Court of Appeals overruled numerous assignments directed to errors in the charge, refusal to charge certain requests, and refusal to direct a verdict, but held that the trial judge erred in refusing to sustain a motion for a new trial based on newly discovered evidence. The case is here on the petition of Mrs. Waters only, complaining of this action of the Court of Appeals, and this is the sole question for consideration.

The evidence is reviewed in the Court of Appeals, and it may be conceded that the case was a close one on its facts and that the additional testimony proposed was material. However, the determinative question presented is whether or not the trial judge rightly exercised his

discretion in refusing to reopen the case for the introduction of this testimony because of defendant's failure to show due diligence. The newly discovered evidence was the testimony of one M. B. Morgan, residing in Helena, Ark., an uncle of one Ernest Cates, a leading witness on the trial for plaintiff.

The collision occurred shortly before 7 a. m., at the intersection of Second and Linden streets in Memphis, immediately beneath a stop light hanging in the center. The bus was moving east on Linden and the car south on Second. The question was, Which driver ran the red light? Witness Cates' car was being driven on Second street following the Waters' car. He testified for plaintiff that the Waters' car entered the intersection on the green light. In the course of his testimony Cates quoted his uncle Morgan, sitting in the car with him, as exclaiming, "Looky there at that bus running the light!" On cross-examination he was asked for, and gave, his uncle's name and residence.

As first filed, the motion of defendant for a new trial did not include the newly discovered evidence ground. This was later made the subject of a supplemental assignment, by permission of the court. It was supported by the affidavits of Attorney Edward P. Russell and of the allegedly newly discovered witness, Morgan. While the general tenor of Morgan's affidavit, rather loosely expressed, is favorable to the defendant as to responsibility for the accident, he says he was not looking and did not see the signal light before the collision. The particular materiality of his evidence, if he should testify in accordance with his affidavit, would be in his impeachment of his nephew, Cates, in that he says in his affidavit that Cates told him after the accident that Wa-

ters ran the red light and was to blame for the death of his father. Pretermitting for the present the insistence urged for petitioner here that the showing made was insufficient because the new evidence proposed would go to impeachment only, or, if going further, was cumulative merely, new evidence of neither class being ordinarily sufficient under the authorities, *Noel* v. *McCrory*, 7 Cold., 623; *Demonbreun* v. *Walker*, 4 Baxt., 199, 204; *McGavock* v. *Brown*, 4 Humph., 251; and, as to impeaching evidence, 46 C. J., 280; 20 R. C. L., 294, we consider now the question of whether or not that diligence required by the rule appears. On this point the trial judge, in passing on the motion, said:

"My opinion is that the Motion for a New Trial should be overruled. I think the strongest argument Mr. Russell has is the one of newly discovered evidence; that is, if it is newly discovered evidence. But, I don't believe it could be considered newly discovered evidence; especially in view of the fact that the young man gave no indication, at all, of trying to hide anything in his testimony. His testimony impressed me and evidently impressed the jury. He said he was with his uncle at the time, taking him down to the station. He said that in the preliminary hearing. And, it was as much the business of the company as it was the plaintiff to have that uncle here. And, this young man is not impeached in any way, as I recall the testimony in Court. And, his testimony was impressive to the Court and also, I think, to the Jury. I think that the motion should be overruled."

The sole showing of diligence in obtaining the testimony of this witness is by the following affidavit of one of counsel for defendant.

"I, Edward P. Russell, state upon oath that I am one of the attorneys for the Southwestern Transportation Company and tried this lawsuit, which has resulted in a $5,000 judgment against the defendant.

"When the witness Ernest Cates was testifying, he told about his uncle, M. B. Morgan, who lives in Helena, Arkansas, having been in the car with him. This was the first time that the defendant knew the name or the address of the uncle of Ernest Cates.

"Following the trial of the case, I directed that he be interviewed, and after making a number of efforts to locate him, we finally located him and he gave the statement attached, as Exhibit 1, which, on its face shows that it is highly material evidence in this lawsuit which was not available to the defendant until this time, but was available to the plaintiff and apparently suppressed.

"Said M. B. Morgan is and can be available as a witness in this action."

Consistent with a proper purpose to confine his statement to the exact facts, it will be seen (1) that the affiant does not say that any effort was made to obtain this testimony before the close of the trial, after the name and address of Morgan had been ascertained, it appearing that Cates disclosed the information when on the stand on Thursday, December 14, 1933, while the trial did not close until Saturday, following; and (2) that affiant says only that "this was the first time that the defendant knew the name or the address of the uncle of Ernest Cates," not that this was the first knowledge that the defendant had that this identical witness, the uncle of Cates, was present and riding in the car with witness when the accident took place, or that the name and address of this eyewitness could not have been earlier ob-

tained. Moreover, the affiant wholly fails to include counsel in the assertion of ignorance made by this affidavit, and this is ordinarily required.

Now it appears from the transcript (pp. 121-128, 298-309) that counsel for defendant introduced as a witness on this trial one Boulware, a court reporter, and by him proved that more than a year before the circuit court trial, and just following the accident, a trial had taken place in the municipal court at which witness Cates had testified, and that he had then testified that his uncle, whom he stated he was driving to the depot, was riding with him in his car, and was therefore manifestly an eyewitness. Identical counsel for defendant making the affidavit under consideration was present on that trial, and quite obviously the same opportunity was then presented as that which was later used upon the trial before the jury to obtain the name and address of this additional eyewitness. It was this to which the learned trial judge referred in his response to the motion above quoted. No effort was made then to get the name and address of this witness, and none appears to have been made in any way or at any time before the trial. Nor is any effort alleged to have been made to locate or communicate with this witness during the progress of the trial, which consumed several days. Counsel urge that reasonable diligence would not require this, but, the name and address having been obtained, we think some showing of effort to reach the witness only a few hours distant was demanded. Further, as indicating that counsel was not surprised at the statement by Cates on this trial that his uncle was in the car with him, counsel appear to have shown no surprise at this statement, making no reference to it that moment, and when, after

asking as to other matters on cross-examination, Cates was asked for his uncle's name and address, the question and its context suggests no surprise, but rather the contrary. We think it further significant that it appears that counsel had a copy of the transcript of the proceedings in the municipal court in his possession and was quite familiar therewith.

In its opinion the Court of Appeals disposed of this issue in the following paragraph:

"It is urged by appellee that the defendant had not shown proper diligence in procuring the evidence of Mr. Morgan for the trial. We think it clear from the record and from the affidavit of Mr. Russell, that the first knowledge that the defendant, or its attorneys had that Morgan was in the car with Cates was obtained from the cross-examination of Cates, and this information was not in response to any question of the attorney for the defendant. Cates in the course of his cross-examination referred to his uncle being in the car with him and making the statement referred to. This occurred during the trial and there is nothing in the record to indicate that the defendant or its attorneys had any opportunity of discovering or learning that Mr. Morgan was in the car with Cates until it was voluntarily disclosed by Cates in the course of his cross-examination. We are therefore of the opinion that the evidence was not only material, and especially in view of the testimony of Cates given at the trial, but that the defendant exercised proper diligence in procuring the statement."

It seems apparent that the important fact was overlooked, hereinbefore mentioned, that on the preliminary trial a year before Cates had "referred to his uncle being in the car with him," and that this testimony was

then taken down for the use of counsel for defendant. We cannot escape the conclusion that knowledge was thus clearly brought home to counsel for defendant, and to other of its agents, that this uncle of Cates was on the scene, an eyewitness, riding with witness Cates. It is apparent that the Court of Appeals is in error in saying that "the first knowledge that the defendant, or its attorneys had that Morgan was in the car with Cates was obtained from the cross-examination of Cates." It is true that his name was then first disclosed, but not the fact of his presence and who he was, as related to Cates. Nor do we agree with the learned Court of Appeals that "there is nothing in the record to indicate that the defendant or its attorneys had any opportunity of discovering or learning that Mr. Morgan was in the car with Cates until it was voluntarily disclosed by Cates in the course of his cross-examination." The learned court does not refer to, and apparently overlooked, that Cates had "voluntarily disclosed" the fact that his uncle was riding with him at the time on the former trial, thus affording the identical opportunity reafforded on this trial for "discovering or learning" the name of this witness.

■ If it be conceded that the proposed new evidence would affect the result, that it is not subject to the objection that it is cumulative only, or goes to impeachment only, that the affidavit is sufficient on its face in its specifications of diligence, nevertheless we think it inescapable that the trial judge exercised only a sound and fair discretion when he refused the motion for a new trial, in view of the undisputed facts (1) that it had been disclosed on the preliminary hearing that this identical witness was present and opportunity then afforded

to obtain his name and address; (2) that no effort was put forth whatever to produce him, or his rebuttal testimony, before the case was submitted to the jury, after full disclosure had been obtained of his name and address; and (3) that no request was presented to the trial judge for time in which to produce this witness or his testimony before the closing of the case.

This conclusion is in application of the rules well settled by our own decisions and those of other jurisdictions, as well as those laid down by leading text-book authorities. *Ross* v. *State,* 130 Tenn., 387, 170 S. W., 1026, 1028 [approved in *Smith* v. *State,* 159 Tenn., 674, at page 686, 21 S. W. (2d), 400, and *Brown* v. *State,* 159 Tenn., 422, 423, 19 S. W. (2d), 231, and other cases], is our leading case on this subject, and deals with it so fully that further citation in this opinion is uncalled for. The requirement is stressed therein that neither the party nor his attorney had knowledge of the evidence ''before or during the trial;'' that the existence of the ''new'' witness was not discovered in time to be used on the trial; that the ''facts had not been communicated to the party [or his counsel] before or during the trial.''

In view of this emphasis placed in our cases on the duty to act, when possible, ''during the trial,'' it is plausibly insisted that due diligence was not exhibited in this regard. The name and address of this witness was fully disclosed on Thursday. The court did not charge the jury until Saturday. Although residing a short distance away, in these days of rapid intercommunication, no effort was made to communicate with him meanwhile. And, moreover, no application was made to the court for time for this purpose, although it appears that the court proceeded with rather unusual delibera-

tion and consideration for counsel, calling them into conference apart from the jury for suggestions as to matters to be given in his charge.

Counsel for defendant urge that it is absurd to say that they should, in the exercise of reasonable diligence, have contacted and produced this witness, in Helena, Ark., before the trial was concluded. It is not so much that the witness was not produced, but that (1) no effort is shown to have been made to produce him before adjournment of the trial, and (2) no application is shown to have been made to the court to grant opportunity to do so. On the contrary, the affidavit affirmatively shows that it was not until "following," that is, after, "the trial of the case," that any attention was given the matter. And it is not pretended that any application whatever was made to the court. It is not unreasonable to assume that the court, on a proper showing, would have adjourned over until Monday to afford such opportunity. Certainly defendant would be in a much stronger position had this course been followed, even if the application had been overruled. See *Railroad* v. *Jones*, 100 Tenn., 512, at page 522, 45 S. W., 681, holding case might be reopened for new evidence after argument begun.

On page 19 of their brief counsel for defendant say that before the trial "the defendant knew that Cates' kinsman, an uncle, was in the car with him, but did not know until the trial had about half concluded the name or the address of that person." Counsel say that Cates was not asked on the municipal court trial for the name and address of his uncle, this eyewitness, because it was not anticipated that this suit for damages would be brought, and did not later inquire of Cates as to this because it was felt that he was a hostile witness. That

suits for damages well nigh invariably follow accidents in which public service corporations are involved is a matter of common knowledge and that such corporate parties seek to fortify themselves by ascertaining the identity of all witnesses and preserving records of all statements made by them is of like common knowledge. In procuring and preserving of a stenographic report of this municipal court hearing, the defendant was quite apparently following this usual customary practice, for its protection. And if, having failed at that time to obtain the name and address of this witness, defendant had shown an attempt later to get the information from Cates, a request made of him and his refusal, a much better showing of diligence would be presented.

██ And this case illustrates the soundness of the general rule, approved in the Ross Case, that "applications of this kind are not looked on with favor, but on the contrary with distrust," because of the temptation to perjury "to strengthen the weak points in the case discovered during the progress of the trial." Upon the belated filing in the Court of Appeals of an assignment charging error to the trial judge in overruling this ground of the motion for a new trial, based on Morgan's affidavit, counsel for plaintiff below brought forward a counter affidavit from Morgan, repudiating his former affidavit. While this latter affidavit is not properly in this record and cannot be considered as such, its tender illustrates, as suggested, the evils incident to this practice, and justifies the cautious indisposition of the courts to grant new trials on affidavits of newly discovered evidence.

The judgment of the Court of Appeals must be reversed, and judgment entered here in affirmance of that of the circuit court.