IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 6, 2009 Session

**RICKY HARRIS v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Carter County**
**No. S16982     R. Jerry Beck, Judge**

---

**No. E2005-00566-SC-R11-PC - Filed January 14, 2010**

---

WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, concurring in part and concurring in the result.

I concur with the Chief Justice's conclusion that Mr. Harris is not entitled to coram nobis relief with regard to either of his newly discovered evidence claims. Her conclusion that the claim based on the evidence regarding the "Bill" letters is time-barred is correct. I cannot, however, concur in her conclusion that the claim based on the evidence regarding the alibi witness is likewise time-barred because Mr. Harris has made out a prima facie case for equitable tolling with regard to that claim. Apart from the question of the timeliness of these claims, I would affirm the trial court's denial of coram nobis relief on both claims because of fatal substantive deficiencies in Mr. Harris's petition for coram nobis relief.

**I.**

The writ of error coram nobis has ancient common-law roots.[1] It was applied by Tennessee's courts as a matter of common law until it was codified in 1858.[2] However, the writ could not be used to challenge judgments in criminal cases until almost one hundred years later. *See Green v. State*, 187 Tenn. 545, 548-51, 216 S.W.2d 305, 306-07 (1948). In

---

[1]*United States v. Denedo*, 556 U.S. ___, ___, 129 S. Ct. 2213, 2220 (2009); *State v. Mixon*, 983 S.W.2d at 666; Larry W. Yackle, *Postconviction Remedies* § 1:11 (2009) (hereinafter "Yackle").

[2]Code of Tennessee §§ 3110 through 3118 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858); *State v. Mixon*, 983 S.W.2d at 667-68. The general statutes governing writs of error coram nobis are now codified at Tenn. Code Ann. §§ 27-7-101 through -108 (2000).

1955, the Tennessee General Assembly created a new statutory version of the writ specifically applicable to criminal proceedings.[3]

In its current statutory form, the writ of error coram nobis is an extraordinary remedy that should be granted only in extreme cases. *State v. Mixon*, 983 S.W.2d at 672-73; *see also United States v. Denedo*, 556 U.S. at ___, 129 S. Ct. at 2221, 2223. It is not a "catch-all" remedy that enables convicted persons to "litigate and relitigate the propriety of their convictions *ad infinitum*," *People v. Hyung Joon Kim*, 202 P.3d 436, 447 (Cal. 2009), and thus it is "known more for its denial than its approval." *State v. Vasques*, 221 S.W.3d 514, 524 (Tenn. 2007) (quoting *State v. Mixon*, 983 S.W.2d at 666). Its purpose is to fill "only a slight gap" in other available remedies, *State v. Mixon*, 983 S.W.2d at 672, by providing relief that would not have been available at trial based on an existing fact that was unknown at the time and for which relief was not available on appeal because the fact was not in the record. *State v. Mixon*, 983 S.W.2d at 667.

Access to the extraordinary remedy available through a writ of error coram nobis must be tempered by the public's dual interests in the orderly and reasonably prompt implementation of its laws and in the finality of judgments. *People v. Hyung Joon Kim*, 202 P.3d at 449; *see also State v. Mixon*, 983 S.W.2d at 670 (emphasizing the importance of "finality to criminal judgments"); *Newsome v. State*, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998). However, while the courts should not lightly cast aside a judgment, their long recognized authority and obligation to protect the integrity of their judgments cautions them to avoid applying the finality rule so inflexibly that it trumps all other competing considerations. *United States v. Denedo*, 556 U.S. at ___, 129 S. Ct. at 2223.

In Tennessee, a trial court's decision whether to grant or deny a writ of error coram nobis is a discretionary one. *State v. Vasques*, 221 S.W.3d at 527-28; *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Accordingly, review by the appellate courts is limited to ascertaining whether the trial court abused its discretion. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). This is a review constraining standard that calls for less intense appellate review. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *In re Estate of Greenamyre*, 219 S.W.3d 877, 885 (Tenn. Ct. App. 2005). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

---

[3]Act of Mar. 8, 1955, ch. 166, § 1, 1955 Tenn. Pub. Acts 639 (codified as amended at Tenn. Code Ann. § 40-26-105 (2006)).

## II.

The practice and procedure governing writs of error coram nobis challenging a criminal conviction present a challenge to the contemporary bench and bar. The current procedural rules governing criminal and post-conviction proceedings do not apply to the statutory writ. The General Assembly has expressly directed in Tenn. Code Ann. § 40-26-105(a) that these writs must "be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith." These rules and procedures are found in Tenn. Code Ann. §§ 27-7-101 through -108 and in the precedents handed down by Tennessee's courts during the past one hundred and fifty years since the writ of error coram nobis was codified in 1858. Thus, even though the rules and procedures in Tenn. Code Ann. §§ 27-7-101 through -108 were abandoned in civil cases almost forty years ago,[4] they still govern statutory writs of error coram nobis that challenge a criminal conviction unless they conflict with a specific provision in Tenn. Code Ann. § 40-26-105.

This case implicates four matters relating to the application of Tenn. Code Ann. §§ 27-7-101 through -108 to writs of error coram nobis. The first involves the general rules of pleading governing these writs. The second relates to the rules of pleading particularly applicable to writs challenging a criminal conviction based on newly discovered evidence. The third pertains to the pleading requirements relating to the statute of limitations and the doctrine of equitable tolling. The final matter involves the role of evidentiary hearings in these proceedings.

## A.

The sufficiency of the contents of a petition for writ of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 is of utmost importance. Judges anticipate that the petition itself embodies the best case the petitioner has for relief from the challenged judgment. Sam Gilreath & Bobby R. Aderholt, *Caruthers' History of a Lawsuit* § 401, at 453 (8th ed. 1963) (hereinafter "Gilreath & Aderholt"). Thus, the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides.

---

[4]Post-judgment motions pursuant to Tenn. R. Civ. P. 60.02 replaced writs of error coram nobis in most civil cases in 1971. Tenn. R. Civ. P. 60.02 advisory comm'n cmt; *see also Harris v. State*, 102 S.W.3d at 592 n.7; *State v. Mixon*, 983 S.W.2d at 668. In addition to the writs authorized by Tenn. Code Ann. § 40-26-105, the requirements and procedures found in Tenn. Code Ann. §§ 27-7-101 through -108 continue to apply to civil proceedings that are not governed by the Tennessee Rules of Civil Procedure. Tenn. Code Ann. § 27-7-101; Ronald W. Eades, *Appellate and Post Conviction Relief in Tennessee*, 5 U. Mem. L. Rev. 1, 6 (1974).

A petition for a writ of error coram nobis must comply with all the requirements of Tenn. Code Ann. § 40-26-105 and the applicable requirements of Tenn. Code Ann. §§ 27-7-101 through -108.[5] It must fully and particularly set forth the legal and factual grounds upon which relief is sought. Gilreath & Aderholt, § 402, at 453; Joseph Higgins & Arthur Crownover, *Tennessee Procedure in Law Cases* § 1765, at 701 (1937) (hereinafter "Higgins & Crownover"); William H. Inman, *Gibson's Suits in Chancery* § 666, at 704 (6th ed. 1982) (hereinafter "Inman").[6] In addition to stating with particularity the grounds upon which relief is sought, the petition must explain specifically how the grounds for relief were not caused by the petitioner's fault or negligence. Tenn. Code Ann. §§ 27-7-102, 40-26-105(b); *see also* Gilreath & Aderholt, § 397, at 450-51; Higgins & Crownover, § 1763, at 701, § 1765, at 701, § 1779, at 704-05; Inman, § 664, at 703, § 666, at 705.[7] The petition must also state specifically the nature of the relief being sought. Higgins & Crownover, § 1779, at 705; *see also State v. Hart*, 911 S.W.2d at 375.[8]

The petition must be prepared with the same specificity required in a motion for new trial. Higgins & Crownover, § 1770, at 702 & § 1781, at 706; 11 David Louis Raybin, *Tennessee Practice: Criminal Practice and Procedure* § 33:20, at 477 (2008) (hereinafter "Raybin"). Therefore, it must be "as specific and certain as the nature of the error will permit." *Memphis St. Ry. v. Johnson*, 114 Tenn. 632, 643, 88 S.W. 169, 171 (1905). Specificity is required for the purpose of assuring (1) that the trial court and the opposing

---

[5]In early practice, it was customary for a person seeking relief under a writ of error coram nobis to first file a petition stating the reason or reasons why the petitioner was entitled to the writ. Thereafter, the petitioner would file separate assignments of error stating the grounds upon which he or she was seeking to reverse the judgment. Gilreath & Aderholt, § 402, at 453-54; Higgins & Crownover, § 1770, at 702. Over time, it became customary to combine the petition and the assignments of error and to consider both the sufficiency of the reason for allying for the writ and the merit of the assignments of error at the same time. *Jacobs v. Silverman*, 19 Tenn. App. 629, 632, 93 S.W.2d at 648, 650 (1936); *Bolling v. Anderson*, 1 Tenn. Ch. (Cooper) 127, 132-34 (1873); 2 Arthur Crownover, Jr., *Gibson's Suits in Chancery* § 1324, at 686 (5th ed. 1956) (hereinafter "*Gibson's Suits in Chancery* 5th").

[6]*See also Elliott v. R.C. McNairy & Co.*, 60 Tenn. 342, 345-36 (1872); *W.D. Dunnivant & Co. v. Miller*, 60 Tenn. 227, 228 (1872); *Crawford v. Williams*, 31 Tenn. (1 Swan) 341, 342 (1857).

[7]*See also Johnson v. Russell*, 218 Tenn. 443, 447-48, 404 S.W.2d 471, 473 (1966), *superseded on other grounds by* Act of Mar. 28, 1978, ch. 738, § 1, 1978 Tenn. Pub. Acts. 658, 658; *Tibbs v. Anderson*, 1 Tenn. Cas. (Shannon) 189, 193 (1866); *Freshwater v. State*, 160 S.W.3d at 553; *State v. Hart*, 911 S.W.2d at 374-75.

[8]In all petitions filed pursuant to Tenn. Code Ann. § 40-26-105, the relief being sought is the setting aside of the judgment of conviction and the granting of a new trial. Tenn. Code Ann. § 40-26-105(c). In proper circumstances, the petitioner may also request that bail be set pending the new trial. Tenn. Code Ann. § 40-26-105(c).

party are informed precisely of the error or errors being relied upon and (2) to assure the appellate courts that the trial court was made aware of the alleged error and was given an opportunity to consider and pass on it. *Ferguson v. State*, 166 Tenn. 308, 311, 61 S.W.2d 467, 468 (1933); *State v. McKinney*, 603 S.W.2d 755, 760 (Tenn. Crim. App. 1980); W. Mark Ward, *Tennessee Criminal Trial Practice* § 31:1 (2008-2009) (hereinafter "Ward").

In addition to these substantive requirements, the petition must be verified under oath. Gilreath & Aderholt, § 398, at 451; Higgins & Crownover, § 1779, 705-06; Inman, § 665, at 704. It is also advisable to file supporting affidavits at the same time the petition is filed. *State v. Hart*, 911 S.W.2d at 375; *see also Ross v. State*, 130 Tenn. 387, 390-94, 170 S.W. 1026, 1027-28 (1914); R.T. Shannon, Annotated Code of Tennessee 1231 n.6 (Nashville, Marshall & Bruce Co., 1896).

**B.**

When the new statutory writ of error coram nobis was originally created, it could not be used to challenge a judgment based on newly discovered evidence regarding matters that had been litigated at trial. *Johnson v. Russell*, 218 Tenn. at 451, 404 S.W.2d at 474.[9] However, in 1978,[10] the General Assembly broadened the scope of the writ to enable it to be used to challenge a conviction based on newly discovered evidence. Tenn. Code Ann. § 40-26-105(b) now provides that

> [u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

As a result of this amendment, challenging a criminal conviction based on newly discovered evidence is now the most common use of the statutory writ.

---

[9] Writs of error coram nobis in civil cases have the same restriction. *Roller v. Burrow*, 180 Tenn. 380, 393, 175 S.W.2d 537, 542 (1943); Inman, § 663; Note, *The Writ of Error Coram Nobis*, 37 Harv. L. Rev. 744, 744 (1924).

[10] Act of Mar. 22, 1978, ch. 738, 1978 Tenn. Pub. Acts 658 (codified at Tenn. Code Ann. § 40-26-105(b)).

Prisoners are "tireless in seeking new trials on the ground of newly discovered evidence." 3 Charles A. Wright, Nancy J. King & Susan R. Klein, *Federal Practice and Procedure* § 557, at 540 (3d ed. 2004) ("*Federal Practice and Procedure*"). However, the courts view these efforts with great caution because they are clouded by concerns of fabrication, perjury, and fraud. *Bigham v. Brewer*, 36 Tenn. (4 Sneed) 432, 436 (1857); Abraham L. Freedman, *The Writ of Error Coram Nobis*, 3 Temp. L.Q. 365, 393-94 (1929). While courts must always be ready to correct errors in their judgments, they must also take steps to safeguard against the defeated party belatedly manufacturing evidence in order to escape the consequences of an adverse verdict. *See Southwestern Transp. Co. v. Waters*, 168 Tenn. 596, 606, 79 S.W.2d 1028, 1032 (1935); *Ross v. State*, 130 Tenn. at 394, 170 S.W. at 1028; *see also* Raybin, § 33:31, at 492.

Prisoners seeking a new trial based on newly discovered evidence must satisfy "rather exacting standards." Raybin, § 33:32, at 494. These standards are the same for motions for new trial based on newly discovered evidence and for writs of error coram nobis filed in accordance with Tenn. Code Ann. § 40-26-105(b). *See* Raybin, § 33:31, at 493.

The motion or petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence[11] and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial,[12] (b) admissible,[13] and (c) credible.[14] In addition to describing the form and substance of the evidence and demonstrating that it

---

[11]*Freshwater v. State*, 160 S.W.3d at 553; *Newsome v. State*, 995 S.W.2d at 133; *State v. Hart*, 911 S.W.2d at 374; *see also W.D. Dunnivant & Co. v. Miller*, 60 Tenn. at 228; *Crawford v. Williams*, 31 Tenn. (1 Swan) at 342.

[12]*Regions Fin. Corp. v. Marsh USA, Inc.*, No. W2008-003230C)A-R3-CV, 2009 WL 400632, at *9 (Tenn. Ct. App. Feb. 19, 2009), *perm. app. denied* (Tenn. Aug. 17, 2009); *Smith v. Smith*, No. W2002-00477-COA-R3-CV, 2003 WL 135056, at *7 n.1 (Tenn. Ct. App. Jan. 15, 2003) (No Tenn. R. App. P. 11 application filed); *State v. Wilson*, No. 03C01-9508-CC-00221, 1996 WL 196519, at *4 (Tenn. Crim. App. Apr. 24, 1996) (No Tenn. R. App. P. 11 application filed); *Short v. Short*, No. 03A01-9402-CH-00065, 1994 WL 315902, at *4 (Tenn. Ct. App. July 5, 1994) (No Tenn. R. App. P. 11 application filed); *see also Better box Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 331 (3d Cir. 2002); *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1358 (5th Cir. 1988); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2808, at 86-87 (2d ed. 1995).

[13]*Newsome v. State*, 995 S.W.2d at 135; *State v. Hart*, 911 S.W.2d at 375.

[14]*State v. Vasques*, 221 S.W.3d at 527; *State v. Bowers*, 77 S.W.3d 776, 784 (Tenn. Crim. App. 2001); *Newsome v. State*, 995 S.W.2d at 135; *State v. Hart*, 911 S.W.2d at 375.

qualifies as "newly discovered evidence," the prisoner must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence;[15] and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.[16]

A motion or petition seeking a new trial based on newly discovered evidence must also be supported by affidavits. These affidavits must be relevant, material, and germane and must be based on personal knowledge. *State v. Hart*, 911 S.W.2d at 375. They must set forth with particularity facts demonstrating (1) that the prisoner and his or her trial counsel exercised reasonable diligence and were not negligent in the search for evidence in preparation for the original trial and (2) that the prisoner and his or her trial counsel had no pretrial knowledge of the allegedly newly discovered evidence. *Jones v. State*, 2 Tenn. Crim. App. 160, 165, 452 S.W.2d 365, 367 (1970); Raybin, § 33:32, at 494-97. Affidavits of the witnesses through whom the newly discovered evidence is sought to be introduced must explain the materiality of the evidence and must state that the evidence was not communicated to the prisoner or his or her trial counsel prior to the original trial. *Jones v. State*, 2 Tenn. Crim. App. at 165, 452 S.W.2d at 367; Raybin, § 33:32, at 494-97.

## C.

A petition for writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. It is subject to being summarily dismissed if it does not show on its face that it has been timely filed. Higgins & Crownover, § 1771, at 702; Inman, § 665, at 704, § 668, at 709. Accordingly, unlike other proceedings governed by the Tennessee Rules of Civil Procedure in which failure to comply with the statute of limitations must be raised as an affirmative defense,[17] compliance with the

---

[15]*See, e.g.*, *Johnson v. Russell*, 218 Tenn. at 448, 404 S.W.2d at 473; *Tibbs v. Anderson*, 1 Tenn. Cas. (Shannon) at 193; *Bigham v. Brewer*, 36 Tenn. (4 Sneed) at 435; *Freshwater v. State*, 160 S.W.3d at 553; *State v. Hart*, 911 S.W.2d at 374-75; *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983). This requirement has also been phrased as requiring the prisoner to demonstrate that he or she was "without fault" in the sense that the exercise of reasonable diligence would not have led to the timely discovery of the newly discovered evidence. *State v. Vasques*, 221 S.W.3d at 527; *see* Tenn. Code Ann. § 40-26-105(b).

[16]*State v. Vasques*, 221 S.W.3d at 527-28; *Mahalovitch v. Vaughn*, 60 Tenn. at 328-29; *Tibbs v. Anderson*, 1 Tenn. Cas. (Shannon) at 191; *Newsome v. State*, 995 S.W.2d at 133; *State v. Hart*, 911 S.W.2d at 374-75.

[17]Tenn. R. Civ. P. 8.03 states that the statute of limitations is an affirmative defense which must be raised by the defendant. Writs of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 are not
(continued...)

-7-

timely filing requirement in Tenn. Code Ann. § 27-7-103 is an essential element of a coram nobis claim.

In 2001, however, this Court applied the doctrine of equitable tolling, first embraced in *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992), to petitions for a writ of error coram nobis. *Workman v. State*, 41 S.W.3d 100, 101-04 (Tenn. 2001). Accordingly, prisoners who file a petition pursuant to Tenn. Code Ann. § 40-26-105 more than one year after the judgment of conviction becomes final may avoid dismissal of the petition if they can demonstrate they are entitled to equitable tolling. To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run;[18] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims;[19] and (3) that the prisoner was deprived of a constitutional right during the conviction process with regard to the ground for relief now being pursued.[20] A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

## D.

It has become quite commonplace for prisoners to assert that trial courts should conduct evidentiary hearings whenever a petition for writ of error coram nobis is filed. However, at no point during the evolution of the writ of error coram nobis in Tennessee have the appellate courts held that trial courts cannot dismiss a petition for writ of error coram nobis without first holding an evidentiary hearing. While there are certainly petitions for a writ of error coram nobis that cannot be easily resolved on the face of the petition alone, *Harris v. State*, 102 S.W.3d at 593, trial courts need only conduct evidentiary hearings when they are essential. Yackle, § 1:10.

---

[17](...continued) governed by the Tennessee Rules of Civil Procedure but rather by Tenn. Code Ann. §§ 27-7-101 through -108. Tenn. Code Ann. § 27-7-101 states explicitly that the Tennessee Rules of Civil Procedure do not apply to these writs. Accordingly, I would no longer adhere to our characterization of the statute of limitations as an affirmative defense in *Harris v. State*, 102 S.W.3d at 593; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

[18]*Sample v. State*, 82 S.W.3d 267, 272 (Tenn. 2002); *Sands v. State*, 903 S.W.2d at 301; *Burford v. State*, 845 S.W.2d at 205.

[19]*Sands v. State*, 903 S.W.2d at 301.

[20]*Burford v. State*, 845 S.W.2d at 207.

Petitions for a writ of error coram nobis have always been subject to challenge by a motion to dismiss. Gilreath & Aderholt, § 401, at 453; Higgins & Crownover, § 1771, at 702, § 1782, at 707; Inman, § 668, at 709. These motions may be filed at any time prior to the final disposition of the case. *Elliott v. R.C. McNairy & Co.*, 60 Tenn. at 346; *Inman v. Fox*, 1 Tenn. App. 119, 122 (1925); Higgins & Crownover § 1771, at 702. If the averments in the petition are insufficient to warrant relief, the petition may be dismissed. *Elliott v. R.C. McNairy & Co.*, 60 Tenn. at 346; *Carney v. McDonald*, 57 Tenn. (10 Heisk.) 232, 235 (1872); *Gallena v. Sudheimer*, 56 Tenn. (9 Heisk.) 189, 190 (1872). If the petition is dismissed on motion, a judgment of dismissal affirming the challenged judgment should be entered. Higgins & Crownover, § 1778, at 704.

Tennessee's appellate courts have consistently upheld the dismissal of a petition for writ of error coram nobis following a challenge in a motion to dismiss or demurrer. *See e.g.*, *U.S.F. & G. Co. v. Reese*, 201 Tenn. 702, 705-06, 301 S.W.2d 535, 536 (1957); *Elliot v. R.C. McNairy & Co.*, 60 Tenn. at 346-47; *Gallena v. Sudheimer*, 56 Tenn. at 190-91; *Bigelow v. Miss. Cent. & Tenn. R.R. Co.*, 39 Tenn. (2 Head) 624, 625-27 (1859).[21] Similarly, the Court of Criminal Appeals has held repeatedly that a trial court is not required to hold an evidentiary hearing when a petition for writ of error coram nobis fails to meet the necessary prerequisites for granting coram nobis relief. *Cole v. State*, 589 S.W.2d 941, 941-43 (Tenn. Crim. App. 1979); *see also State v. Lingerfelt*, 687 S.W.2d 294, 295 (Tenn. Crim. App. 1984); Ward, § 32:34.[22]

Mr. Harris asserts that he is entitled to an evidentiary hearing because of Tenn. Code Ann. § 40-26-105(c)'s requirement that "[t]he issue shall be tried by the court without the intervention of the jury." He insists that the reference to issues being "tried by the court" can only mean that all issues raised in a petition for writ of error coram nobis must be "tried." Mr. Harris is placing far too much weight on this language. When the plain language of Tenn. Code Ann. § 40-26-105(c) is considered in light of the history of the evolution in the use of the writ of error coram nobis in Tennessee, no conclusion can be drawn other than that the purpose of the statutory direction that writs of error be "tried by the court" was to make

---

[21]*See also* D.L. Grayson, 2 *The Annotated Constitution and Code of Tennessee* 859-60, 864 (Chattanooga, Times Print 1895) (noting that both before and after codification of the writ of error coram nobis it could be addressed through a motion to dismiss or a demurrer).

[22]*See also Plummer v. State*, No. M2008-00110-CCA-R3-CO, 2008 WL 4210788, at *1 (Tenn. Crim. App. Sept. 11, 2008), *perm. app. denied* (Tenn. Dec. 22, 2008); *State v. McGowan*, No. M2007-02681-CCA-R3-CO, 2008 WL 4170273, at *3 (Tenn. Crim. App. Aug. 5, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008); *State v. Hogue*, No. M2005-02874-CCA-R3-CD, 2007 WL 674635, at *3 (Tenn. Crim. App. Feb. 28, 2007), *perm. app. denied* (Tenn. May 14, 2007); *Austin v. State*, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, at *5 (Tenn. Crim. App. Dec. 13, 2006) (No Tenn. R. App. P. 11 application filed).

clear that disputed questions of fact, when they arise, should be decided by the trial judge rather than by a jury.

In 1851, this Court held that disputed issues of fact arising in coram nobis proceedings should be resolved by a jury. *Crawford v. Williams*, 31 Tenn. at 343. This decision was not well-received by the lower courts or by Tennessee's leading legal scholars. *Bolling v. Anderson*, 1 Tenn. Chan. at 133-34; Abraham Caruthers, *History of a Lawsuit* § 544, at 357-58 (Cincinnati, Robert Clarke & Co. 2d ed. 1866). Over time, the practice in Tennessee and elsewhere moved away from mandating jury trials of all disputed fact issues to using juries only when either of the parties requested one.[23] As a result, with regard to employing juries in writs of error coram nobis, the "must" in *Crawford v. Williams* became "may," and jury trials in coram nobis proceedings became rare, although not entirely unknown.

When the General Assembly enacted Tenn. Code Ann. § 40-26-105(c) in 1955, it laid to rest any ambiguity regarding how the issues raised by a petition for writ of error coram nobis arising out of a criminal proceeding should be tried. When a trial court determines that an evidentiary hearing with regard to disputed fact issues is necessary, Tenn. Code Ann. § 40-26-105(c) ensures a judge, not a jury, will determine disputed facts in a coram nobis proceeding and will then decide whether the petitioner is entitled to a new trial.

### III.

Mr. Harris has asserted two claims for coram nobis relief. With regard to each claim, the Court must first determine whether Mr. Harris has asserted the claim in a timely manner and, if not, whether he has demonstrated that he is entitled to equitable tolling of the statute of limitations as provided in Tenn. Code Ann. § 27-7-103. The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations. The substantive adequacy of Mr. Harris's petition need only be addressed if Tenn. Code Ann. § 27-7-103 does not bar his claim.

### A.

Mr. Harris's first claim for coram nobis relief is based on the "Bill" letters and the evidence he later obtained regarding the purported authorship of these letters. There is no question that the petition asserting this ground for coram nobis relief was filed well after the expiration of the one-year statute of limitations in Tenn. Code Ann. § 27-7-103. Thus, the

---

[23] *See Gibson's Suits in Chancery* 5th, § 1325, at 686; Gilreath & Aderholt, § 402, at 437; Sam B. Gilreath, *Caruthers' History of a Lawsuit*, 402, at 437 (7th ed. 1951); Lester B. Orfield, *The Writ of Error Coram Nobis in Civil Practice*, 20 Va. L. Rev. 423, 436 (1934).

pivotal question is whether Mr. Harris's petition demonstrates that he is entitled to equitable tolling under *Workman v. State*.

The equitable tolling analysis entails a consideration of "the governmental interests involved and the private interests affected by the official action." *Workman v. State*, 41 S.W.3d at 103. The court must weigh these competing interests to determine whether the constitutional requirements of due process require tolling in contravention of the statutory limitations imposed by the General Assembly. Before the procedural bar of a statute of limitations may be applied, "due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d at 208. Where a basis does arise for tolling the applicable statute of limitations, there is no specific time period in which a prisoner must raise his or her claim. Rather, based on the facts of the particular case, the prisoner must file his or her petition within a time period that "does not exceed the reasonable opportunity afforded by due process." *See Sample v. State*, 82 S.W.3d at 276; *Workman v. State*, 41 S.W.3d at 103.

I have little difficulty in finding that Mr. Harris is not entitled to tolling of the statute of limitations with regard to his coram nobis claim based on the "Bill" letters or based on the handwriting evidence regarding the identity of the author of these letters. First, Mr. Harris has not been deprived of an opportunity to seek relief from his conviction based on these letters. To the contrary, the "Bill" letters were one of the grounds for his unsuccessful petition for post-conviction relief. Mr. Harris asserted that the State violated *Brady v. Maryland* by failing to turn over these letters prior to his trial. However, following an evidentiary hearing, the post-conviction trial court found, and the Court of Criminal Appeals affirmed, that no *Brady* violation had occurred because the State did not receive these letters prior to Mr. Harris's trial. *Harris v. State*, 1998 WL 191441, at *7, 10. Because this conclusion is now the law of the case, there is no need to revisit it.

The second basis for my conclusion that Mr. Harris is not entitled to equitable tolling with regard to his "Bill" letters claim is that the evidence he is relying upon – both the "Bill" letters themselves and the evidence purportedly identifying the author of these letters – is inadmissible. A third party's confession made out-of-court is hearsay. However, a confession by a third party to a crime for which the defendant was convicted qualifies as a statement against penal interest that would be admissible as an exception to the hearsay rule under Tenn. R. Evid. 803(b)(3). Thus, a defendant seeking coram nobis relief could proffer a third party's confession to prove that the crime for which he or she was convicted was committed by someone else.

However, this principle cannot be extended to anonymous third-party confessions because they do not qualify as statements against penal interest. *State v. Kiser*, 284 S.W.3d

227, 263-66 (Tenn. 2009); *Clark v. Optical Coating Lab., Inc.*, 80 Cal. Rptr. 3d 812, 833-34 (Ct. App. 2008); *Greenfield v. People*, 85 N.Y. 75, 86-87 (1881); *State v. Tucker*, 414 S.E.2d 548, 555 (N.C. 1992); *Commonwealth v. Lewis*, 372 A.2d 399, 403 (Pa. 1977). The "Bill" letters are anonymous confessions and do not become any less so because a handwriting expert may have tied them to another person more than a decade later. That subsequent identification does not change the fact that the letters were written with an expectation that the author would remain anonymous. The "Bill" letters would not be admissible as a third party's admission against interest under Tenn. R. Evid. 803(b)(3), *State v. Kiser*, 284 S.W.3d at 263-66, and the evidence purportedly tying the letters to Mr. Foster are inadmissible, and therefore irrelevant.

In exceptional circumstances, Tennessee's courts must relax the strict application of the rules of evidence to enable a defendant to present his or her defense in order to meet the requirements of the Due Process Clause of the United States Constitution. *State v. Brown*, 29 S.W.3d 427, 433 (Tenn. 2000).[24] In determining whether the State's rules of evidence must be relaxed, the court must consider (1) whether the excluded evidence is critical to the defense, (2) whether the excluded evidence bears sufficient indicia of reliability, and (3) whether the interests supporting the exclusion of the evidence is substantially important. *State v. Brown*, 29 S.W.3d at 433-34.

There is no question that an authentic confession by a third party to the murder of Ms. Gouge would be critical to Mr. Harris's defense. However, anonymous confessions in general, and this confession in particular, lack indicia of reliability, and the State's interest in excluding this evidence is sufficiently important to warrant its exclusion.

This Court's interpretation of the Due Process Clause of the Fourteenth Amendment in *State v. Brown* is based on *Chambers v. Mississippi*, 410 U.S. 284 (1973) and *Green v. Georgia*, 442 U.S. 95 (1979). In those cases, the evidence bolstering the reliability of the confessions was substantial. In both cases, (1) non-anonymous confessions were made to a close friend spontaneously after the murder, (2) the additional supporting evidence corroborating each confession was substantial, (3) the confessions were statements against penal interest, and (4) there was no reason from the record to believe that the declarant had

_____

[24]The question of whether *State v. Brown* is a correct interpretation of the requirements of the Due Process Clause of the federal constitution is not directly before us. *Compare State v. Brown*, 29 S.W.3d 427 (Tenn. 2000) *with State v. Brown*, 29 S.W.3d at 436-445 (Holder, J. dissenting); 2 *McCormick on Evidence* § 252, at 165 n.81 (Kenneth S. Broun ed., 6th ed. 2006); *see also* Michael H. Graham, 2 *Winning Evidence Arguments* § 804:3 advocacy notes (2008). In a future case, this question may warrant consideration. Irrespective of the requirements of the federal constitution, whether *State v. Brown*, 29 S.W.3d 427 (Tenn. 2000) properly addresses the scope of protection afforded by article I, section 8 of the Tennessee Constitution may also warrant consideration.

an ulterior motive in making the confession. *Green v. Georgia*, 442 U.S. at 97. The first and third factors, which were heavily relied upon by the United States Supreme Court in *Chambers v. Mississippi* and *Green v. Georgia*, are almost by definition and certainly in this case inapplicable to anonymous confessions.

In *State v. Brown*, this Court concluded that the Due Process Clause required admission of hearsay evidence, despite not qualifying for the statement against interest exception, finding reliability on another basis. *State v. Brown*, 29 S.W.3d at 433-34. As in *Chambers v. Mississippi* and *Green v. Georgia*, the statement was not anonymous, was made to a friend of the declarant around the time of the conduct being described, and nothing in the record suggested any animosity between the two or a motive for fabrication. *State v. Brown*, 29 S.W.3d at 431, 434. Additionally, as in *Chambers v. Mississippi* and *Green v. Georgia*, another witness was prepared to testify as to having seen physical acts that helped corroborate the declarant's statement. *State v. Brown*, 29 S.W.3d at 431, 434. We also found significant that the statement from the victim, although not technically qualifying, was analogous to an admission by a party opponent, and thus while not a statement against penal interest, was nevertheless in accord with another firmly rooted hearsay exception. *State v. Brown*, 29 S.W.3d at 435.

The circumstances establishing reliability of the third-party confessions in *Chambers v. Mississippi*, *Green v. Georgia*, and *State v. Brown* are absent in this case. The anonymous confession in the "Bill" letters does not qualify as a statement against interest. Even assuming the confession could be attributed to Mr. Foster, he is not a victim or claimant, and no other well-recognized hearsay exception can be invoked. The confession was not made openly to a friend shortly after the murder but instead made anonymously approximately four years after the murder and five months after Mr. Harris was denied permission to pursue a direct appeal before this Court. There is absolutely no corroborating evidence in the form of eyewitness testimony from others or physical evidence tying Mr. Foster to the murder of Ms. Gouge. Furthermore, the fact the statement appeared after Mr. Harris's conviction prompts concerns regarding the ulterior motives underlying this anonymous confession. In other words, the anonymous confession simply does not bear sufficient indicia of reliability to trump the Tennessee Rules of Evidence under the constitutional mandate of the Due Process Clause. Thus, the requirement of the second *State v. Brown* factor is simply not met.

As for the third *State v. Brown* factor, the State's interest in discouraging the admission of anonymous confessions is substantial. Post-judgment confessions are not uncommon and should be viewed with skepticism, *Brown v. State*, 955 S.W.2d 901, 902 (Ark. 1997), and permitting the introduction of anonymous confessions would have potentially debilitating effects on the criminal justice system. *State v. Young*, 574 P.2d 1171, 1180 (Wash. 1978) (observing that if anonymous confessions were admitted into evidence

-13-

"the floodgates would be open and all semblance of trustworthiness of evidence would disappear"). Simply stated, Mr. Harris's petition for a writ of error coram nobis does not present a circumstance requiring the admission of an anonymous third-party confession or the evidence purporting to establish the author thereof in contravention of the Tennessee Rules of Evidence. *See State v. Kiser*, 284 S.W.3d at 267-68.

Accordingly, in weighing the competing interests with regard to the application of equitable tolling in this case, the Court must balance the governmental interest in "the prevention of stale and groundless claims," *Workman v. State*, 41 S.W.3d at 103, against evidence that is inadmissible and thus would not have had any effect on the trial. Where the evidence a party is seeking to rely upon as basis for their writ of error coram nobis is inadmissible, it is difficult to see how this balance could favor tolling the statute of limitations. It certainly does not tip the balance toward tolling in this case.

A third basis for my conclusion that tolling is not warranted with regard to the claim relating to the "Bill" letters is Mr. Harris's delay in filing a petition for writ of error coram nobis. While there is no specific time period in which a prisoner must present a petition after their discovery of new evidence, petitioners must present the petition within a time period that "does not exceed the reasonable opportunity afforded by due process." *See Sample v. State*, 82 S.W.3d at 276; *Workman v. State*, 41 S.W.3d at 103. Mr. Harris received a copy of the letter from "Bill" on June 13, 1991. He did not file a petition seeking a writ of error coram nobis based upon this letter until March 11, 2004. Mr. Harris's delay of nearly thirteen years in bringing a coram nobis petition on this basis is in excess of the reasonable opportunity afforded by due process.

The defects in Mr. Harris's petition, coupled with the fact that the evidence regarding the authorship of the "Bill" letters was not newly discovered evidence for the purpose of Tenn. Code Ann. § 40-26-105(b), provide a sound basis for concluding that Mr. Harris has failed to demonstrate that he is entitled to equitable tolling of the statute of limitations with regard to his claim for coram nobis relief regarding the "Bill" letters and the evidence regarding the authorship of these letters. Accordingly, I have concluded that Mr. Harris's claim based on the "Bill" letters and the evidence regarding the authorship of these letters is time-barred because it was filed after the statute of limitations in Tenn. Code Ann. § 27-7-103 expired and because due process does not mandate equitable tolling in this case.

**B.**

Mr. Harris's second claim for coram nobis relief is based on the alleged newly discovered evidence regarding a police telephone conversation with a potential alibi witness prior to his trial. Mr. Harris asserts that the State did not turn over this information to him

or to his lawyer prior to his trial and that had the State done so, he would have been able to present an alibi defense at trial. My analysis of the viability of this claim for coram nobis relief follows a different path than my analysis of Mr. Harris's claim relating to the "Bill" letters.

There is no question that Mr. Harris asserted his claim based on the evidence regarding the alleged alibi witness after the statute of limitations in Tenn. Code Ann. § 27-7-103 expired. However, unlike his claim based on the evidence regarding the "Bill" letters, Mr. Harris's petition contains sufficient specific factual averments which, if true, make out a prima facie basis for invocation of the equitable tolling doctrine. Even though the State denied the authenticity of any of the evidence regarding the alibi witness produced by Mr. Harris, I will presume for the purpose of my analysis in this case that the police interviewed a potential alibi witness prior to trial and failed to turn over this evidence to Mr. Harris or his attorney.[25]

I now turn to the three-pronged equitable tolling analysis. First, the evidence relating to the police officer's purported pretrial telephone conversation with a potential alibi witness qualifies as later arising newly discovered evidence. Based on the allegation in his petition, Mr. Harris did not learn of this conversation until sometime after August 1998 – well after the statute of limitations in Tenn. Code Ann. § 27-7-103 expired. Second, the purported failure of the State to turn over this information prior to trial, if in fact the information existed, would have amounted to a deprivation of a constitutional right during the conviction process because *Brady v. Maryland* obligated the State to turn over potentially exculpatory information to Mr. Harris. Third, the strict enforcement of the statute of limitations in Tenn. Code Ann. § 27-7-103 would deprive Mr. Harris of a reasonable opportunity to seek a new trial on the ground that the State improperly failed to turn over potentially exculpatory evidence before his 1988 trial.

Although Mr. Harris mistakenly filed a petition to reopen his post-conviction petition rather than filing a petition for a writ of error coram nobis, he sought a new trial based upon this newly discovered evidence shortly after he "discovered" it. While it is possible that a factual hearing with regard to these police investigative notes might have resulted in a determination that the statute of limitations should bar such a claim, under the facts as alleged in Mr. Harris's petition, I am unprepared to find as a matter of law that his petition has not stated an adequate prima facie case for equitable tolling.

---

[25]Because the trial court disposed of Mr. Harris's petition without a hearing, it did not address the authenticity of the evidence regarding the alibi witness or the credibility of the witnesses presenting it.

However, finding that Mr. Harris's petition contains sufficient averments to warrant the invocation of the equitable tolling doctrine does not end the inquiry. To the contrary, the State's primary argument for reversing the Court of Criminal Appeals and affirming the trial court's dismissal of Mr. Harris's petition is that Mr. Harris's petition is facially insufficient on the merits. To be entitled to coram nobis relief based on newly discovered evidence, Mr. Harris's petition must provide specific facts demonstrating (1) that the evidence upon which he is seeking coram nobis relief is newly discovered evidence and (2) that this evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence. Assuming the facts are as alleged in Mr. Harris's petition, his petition is, nevertheless, fatally deficient on its face.

Accepting for purposes of argument the facts are as alleged in Mr. Harris's petition, then Mr. Harris had no direct knowledge that the authorities had located Ms. Hampton or that she had told them that on some date in September 1987 she had received roadside assistance from an individual matching Mr. Harris's description, driving a car that matched the description of his vehicle. However, no one knows more about what transpired on the morning of September 8, 1987, than Mr. Harris. He knows the full extent of his culpability in Ms. Gouge's disappearance and death, and he knows precisely what his activities were on September 8, 1987. Mr. Harris also has direct, personal knowledge regarding whether he actually stopped to help a stranded motorist on September 8, 1987.

Despite numerous opportunities both before and during his trial, neither Mr. Harris nor his lawyer told the police, the prosecuting attorneys, the trial judge, or the jury that he was helping a stranded motorist at the very time that the State claimed that he was killing Ms. Gouge and disposing of her body. In short, Mr. Harris never asserted an alibi defense regarding a stranded motorist in the proceedings that resulted in his conviction in 1988. Quite to the contrary, he provided a detailed account of his movements on the morning on September 8, 1987, that is irreconcilably inconsistent with his current alibi claim.

Mr. Harris has also provided no information regarding his efforts to find Ms. Hampton prior to the trial or in the first decade following his conviction and incarceration. He failed to indicate in his coram nobis petition that he ever informed the lawyers who were representing him that he stopped to help a stranded motorist. The petition is also silent with regard to any efforts that Mr. Harris made between September 8, 1987 and August 1998 to locate the stranded motorist whom he now claims he assisted on September 8, 1987.

To qualify as newly discovered evidence, the evidence must have been unknown to the defendant at the time of trial.[26]  A narrow exception exists to this requirement, where "although not newly discovered evidence, in the usual sense of the term," the "*availability*" of the evidence "is newly discovered."  *Taylor v. State*, 180 Tenn. 62, 67, 171 S.W.2d 403, 405 (1943); *see generally* Raybin, § 33:32, at 495; 20 Tenn. Jur. *New Trials* § 6, at 17-18.  Assuming the facts are as alleged in Mr. Harris's petition, he was fully aware of the existence of an alibi witness from the day of Ms. Gouge's disappearance, and accordingly, aware of this evidence at the time of trial.  Nor has Mr. Harris demonstrated in his petition the unavailability of Ms. Hampton as a witness.

Furthermore, a decision by a petitioner to change defense strategy following an unfavorable verdict and to belatedly rely on evidence that was known or discoverable at or before the trial does not render the evidence newly discovered.  *United States v. Olender,* 338 F.3d 629, 635-36 (6th Cir. 2003); *United States v. Soblen*, 203 F. Supp. 542, 565 (S.D.N.Y. 1961); *State v. Barry*, 611 P.2d 1262, 1266-67 (Wash. Ct. App. 1980); *Hopkinson v. State*, 679 P.2d 1008, 1021 (Wyo. 1984); 3 Federal Practice and Procedure § 557, at 547.  Thus, a petitioner who desires to present his case under a different theory in which evidence available at the original trial now becomes important should not be granted a new trial based on newly discovered evidence.  *United States v. Hamling*, 525 F.2d 758, 759 (9th Cir. 1975).

Now, sixteen years after his trial, Mr. Harris seeks coram nobis relief based on alleged newly discovered evidence regarding a defense he never asserted at trial.  He was given a full and fair opportunity to assert all defenses available to him at trial, including an alibi defense, but he never claimed that he was assisting a stranded motorist on the morning of September 8, 1987.  Mr. Harris has failed to present the courts with any persuasive reasons to justify excusing him from his tactical decision not to assert this defense at trial.  *United States v. McCord*, 509 F.2d 334, 343-44 (D.C. Cir. 1974) (declining to grant coram nobis relief to a Watergate burglar based on newly discovered evidence relating to a defense he did not assert at trial).

---

[26] *See*, e.g., *Seay v. City of Knoxville*, 654 S.W.2d at 399 (stating that "to justify a new trial for newly discovered evidence it must be shown that the new evidence was not known to the moving party prior to or during trial"); *Jones v. State*, 2 Tenn. Crim. App. at 165, 452 S.W.2d at 367(indicating that "[a]n accused seeking a new trial on the ground of newly discovered evidence must file an affidavit setting forth facts showing . . . that he and his [or she and her] counsel had no pre-trial knowledge of the alleged newly discovered evidence"); 3 *Federal Practice and Procedure* § 557, at 541 ("[a] motion based on newly discovered evidence must disclose . . . that the evidence is newly discovered and was unknown to the defendant at the time of trial");  Raybin, § 33:32, at 495 ("If the defendant or his attorneys were aware of the evidence but chose not to use it, the proof is not newly discovered.");  20 Tenn. Jur. *New Trials* § 6, at 16-17 (2005) (indicating that "[t]o obtain a new trial based on newly discovered evidence a defendant must show that the evidence . . . [w]as discovered only after the trial . . . .").

In criminal proceedings, the State, like the defendant, is entitled to a fair trial free from undue prejudice. *State v. Parsley*, 550 S.W.2d 949, 952 (Tenn. 1977); *State v. Goltz*, 111 S.W.3d 1, 4 (Tenn. Crim. App. 2003); *State v. Huskey*, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *88 (Tenn. Crim. App. Oct. 11, 2002), *perm. app. denied* (Tenn. 2003); *State v. Drew,* No. M2000-01853-CCA-R3-CD, 2001 WL 1028821, at *6 (Tenn. Crim. App. Sept. 7, 2001), *perm. app. denied* (Tenn. 2002); *State v. Roe*, No. 02C01-9702-CR-00054, 1998 WL 7107, at *8 (Tenn. Crim. App. Jan. 12, 1998), *perm. app. denied* (Tenn. 1999). Permitting a defendant to change strategy with impunity sixteen years after the trial deprives the State of a reasonable opportunity to rebut the evidence or to impeach the witnesses. *See United States v. Edmonds*, 765 F. Supp. 1112, 1120 (D.D.C. 1991).

Finally, in order to obtain coram nobis relief under Tenn. Code Ann. § 40-26-105(b), a petitioner must demonstrate that the newly discovered evidence could not, with the exercise of reasonable diligence, have been discovered at or before the trial. In seeking a new trial, the defendant must establish in his petition that "he or his attorney [or she and her attorney] tried diligently to obtain the information prior to trial. A rather rigorous showing of diligence is demanded." Raybin, § 33:32, at 495. Mr. Harris's petition, however, is utterly and completely devoid of any indication of any effort on his part to locate Ms. Hampton prior to trial or for more than a decade after his conviction, much less an assertion of facts showing a diligent effort to locate a witness whose existence he was aware of prior to the trial.

The factual averments in Mr. Harris's petition are significantly deficient. The petition provides no specific facts setting forth a basis for excusing him from failing to assert the stranded motorist alibi defense at trial. It provides no specific facts demonstrating that neither he nor his trial counsel were aware of the evidence concerning the stranded motorist, if indeed the stranded motorist existed, prior to trial. It provides no specific facts demonstrating that he exercised reasonable diligence to obtain this evidence or that this evidence would not have been discoverable with the exercise of reasonable diligence. Finally, it contains no specific facts demonstrating that his failure to present evidence regarding his coming to the aid of a stranded motorist on the morning of September 8, 1987, was not due to his fault or negligence. Accordingly, the State is correct that even if Mr. Harris's claim for coram nobis relief based on the evidence regarding the stranded motorist was entitled to equitable tolling, the substantive deficiencies in his petition provided the trial court with ample grounds to deny his petition for post-conviction relief without a hearing.

## IV.

Based on my review of the record, I have concluded that the Court of Criminal Appeals erred by reversing the trial court's dismissal of Mr. Harris's petition for writ of error

coram nobis and by remanding the case with directions to conduct an evidentiary hearing. The trial court did not err by dismissing Mr. Harris's petition without a hearing because it was deficient on its face. Accordingly, I would reverse the Court of Criminal Appeals and affirm the trial court's February 8 and 11, 2005 judgments.

I am authorized to state that Justice Clark concurs in this opinion.


_____
WILLIAM C. KOCH, JR., JUSTICE